UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AHMADOU SANKARA,

                                        Plaintiff,

                                                                    9:16-CV-00885

v.
                                                                    (FJS/TWD)

MONTGOMERY, BURGESS, LOPEZ,

                                        Defendants.
_____

APPEARANCES:                                OF COUNSEL:

AHMADOU SANKARA
16-R-0122
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, New York

HON. BARBARA D. UNDERWOOD          MATTHEW P. REED, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

The sole remaining claim in *pro se* Plaintiff Ahmadou Sankara's amended complaint

(Dkt. No. 19) in this civil rights action brought under 42 U.S.C. § 1983 is his Eighth Amendment

conditions of confinement claim involving the alleged denial of meals against Defendants Keith

Montgomery ("Montgomery"), a Department of Corrections and Community Supervision

("DOCCS") Sergeant at Fishkill Correctional Facility ("Fishkill"); Erik Burgess ("Burgess"), a

Corrections Officer ("C.O.") at Fishkill; and Jessica Lopez ("Lopez"), a former C.O. at Fishkill. (Dkt. No. 22 at 22.[1])  Montgomery, Burgess, and Lopez now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to exhaust his administrative remedies and has failed to assert a constitutional violation. (Dkt. Nos. 81 and 81-1.)  Plaintiff has filed papers in opposition to Defendants' motion.[2]  (Dkt. No. 84.)

For reasons that follow, the Court recommends that Defendants' motion for summary judgment be granted.

## II.    FACTUAL BACKGROUND

Plaintiff, an inmate in the custody of DOCCS, was transferred to Fishkill on August 3, 2016.  (Dkt. No. 19 at 11.)  In his amended complaint, Plaintiff alleges that his Eighth Amendment conditions of confinement claim is based upon having been deprived of meals by Defendant Burgess on August 3, 2016, and August 4, 2016; by Defendants Lopez and Montgomery on October 10, 2016, and September 24, 2016; and by Montgomery on October 23, 2016, and October 24, 2016.  *Id.*  At his deposition, Plaintiff testified he was deprived of five meals by the Defendants, which included dinner on August 3 and 4, 2016, and lunch on September 10, 2016, September 23, 2016, and September 24, 2016.  (Dkt. No. 81-3 at 19, 21, 26-27.)

---

[1]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2]    Plaintiff has filed a cross-notice of motion for summary judgment seeking denial of Defendants' summary judgment motion.  (Dkt. No. 84-2).  Because Plaintiff is not cross-moving for summary judgment in his favor, the Court is treating his notice of motion as opposition to Defendants' motion.

### A.    Service of Meals in the Fishkill SHU

Meals are served three times a day in the Special Housing Unit "SHU") at Fishkill.  (Dkt. No. 81-4 at ¶ 7.[3])  Before a meal is served, an announcement is made on the public address system once on each of the two floors notifying inmates of the forthcoming meal, and reminding them to be awake, with their lights on, fully clothed, and with any clothing lines in their cell taken down.  *Id*. at ¶¶ 8-9.  It is made before meal delivery so that inmates have time to prepare. *Id*. at ¶ 9.  The rules for meals are contained in the SHU rulebook given to inmates when they are admitted to the unit.  *Id*. at ¶ 10.  The rules have a dual purpose: to ensure that food is not contaminated and to meet heightened security concerns in SHU.  *Id*. at ¶¶ 11-13.  Plaintiff denies having received the rulebook.  (Dkt. No. 84 at ¶ 17.)

Anywhere from five to seven officers assist in delivering meals, with Defendant Montgomery either leading or following behind the officers to address any problems when he is on duty.  *Id*. at ¶¶ 15-17.  Inmates who do not comply with the established procedures do not receive a meal.  *Id*. at ¶ 18.  Failure to comply with the meal distribution procedures is noted as a refusal of chow and recorded in the SHU logbook.  *Id*. at ¶ 14.

### B.    August 3 and 4, 2016

Plaintiff claims that on August 3, 2016, the day he arrived at Fishkill, he was deprived of dinner by Defendant Burgess.  (Dkt. No. 81-3 at 19, 27.)  Plaintiff testified at his deposition that he received something like a box lunch with bread while en route to Fishkill and should have

---

[3] Paragraph numbers are used where documents identified by CM/ECF docket number contain consecutively numbered paragraphs.

been given dinner at Fishkill but was not. *Id*. at 20. According to Plaintiff, dinner is served at 3:00 or 4:00pm. *Id*. at 22. Plaintiff claims that he and his bunk mate in SHU were denied dinner by Burgess on August 3, 2016, because his bunk mate was not properly dressed. *Id*. at 20-23, 27. Plaintiff was properly dressed and did not say anything, but his bunk mate began arguing with Burgess, which he was not supposed to do, so Burgess also deprived them of dinner the following day, August 4, 2016. *Id*. at 21, 27.

Plaintiff was very hungry and emotionally frustrated the night of August 3, 2016, because he had not made himself breakfast that morning, the lunch he was given was too small, and he did not receive dinner. *Id*. at 26. Plaintiff did receive both breakfast and lunch on August 4, 2016, missing only dinner. *Id*. at 21-22.

While Burgess recalls Plaintiff and his behavior in SHU, he does not recall the specific dates on which Plaintiff claims Burgess deprived him of a meal. (Dkt. No. 81-5 at ¶ 5.) There is an entry for August 3, 2016, in the SHU logbook in indicating that Plaintiff was not admitted to SHU until 6:48 pm, after dinner would have been served. (Dkt. No. 81-3 at 124.) The logbook appears to note two refusals for dinner on August 4, 2016, but does not list the inmates by name. *Id.* at 131.

### C.    September 10, 2016

Plaintiff testified at his deposition that on September 10, 2016, he was denied a haircut by a corrections officer because Plaintiff had allegedly called him a Chinese officer, which Plaintiff denies. (Dkt. No. 81-3 at 32-33.) The officer wrote a misbehavior report on Plaintiff, and when the officer and Montgomery came around serving lunch, Plaintiff, who was standing in front of his door, was told he was not properly dressed and did not receive lunch. *Id*. at 34. Plaintiff did

receive dinner on September 10, 2016. *Id.* at 36. Although Montgomery recalls Plaintiff, he does not recall his interactions with Plaintiff on the dates Plaintiff claims not to have received his meals. (Dkt. No. 81-4 at ¶ 20.)

### D.    September 23, 2016

On September 23, 2016, recreation ("rec") and lunch were called at the same time. (Dkt. No. 81-3 at 39.) According to Plaintiff, a SHU inmate cannot have rec and chow at the same time. *Id.* Plaintiff was at rec with another inmate. *Id.* 39-40. When they came in, Plaintiff told the sergeant he had been at rec and needed his lunch. *Id.* at 39. At that time lunch had not yet passed by Plaintiff's door. *Id.* at 39-40. Plaintiff could see the officers and talked to them when the food was next to him, but Plaintiff was not given any. *Id.* at 40. Plaintiff has identified Montgomery as the one who did not give him lunch. *Id.* at 42.

Plaintiff was very hungry so he started to kick the door for them to bring his food. *Id.* They did not want to bring his food so he left it alone. *Id.* Plaintiff did receive dinner on September 23, 2016. *Id.* at 41.

### E.    September 24, 2016

Plaintiff testified at his deposition that on September 24, 2016, he stopped the Superintendent at Fishkill and started to speak with him about the food issue going on. (Dkt. No. 81-3 at 42.) Montgomery told Plaintiff to talk fast and Plaintiff said he knew Montgomery's name even though he hid it, and that Montgomery was the one who had denied him food September 10 and 23, 2016. *Id.* After the Superintendent left, Montgomery denied Plaintiff lunch again because he had talked to the Superintendent. *Id.* at 42-43. Defendant Lopez came to speak with Plaintiff when he began kicking his door. Plaintiff was told they had already

5

passed and were not coming back, and they walked away. *Id*. at 43. When Plaintiff started kicking the door because he was really hungry, Lopez wrote a misbehavior report on which she stated he had been sleeping. *Id*. Plaintiff testified that of the Defendants only Montgomery was involved in depriving Plaintiff of lunch on September 23, 2016, and that both Montgomery and Lopez were involved on September 24, 2016. *Id*. at 44.

## III.    APPLICABLE SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See*

6

*Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted).  A plaintiff's verified complaint is to be treated as an affidavit.[4]  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."   "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Id.* (citation and internal quotation marks omitted).  "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation."  *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted).  "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations.  "*Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997)  (citation omitted).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball*

---

[4]  The Court finds that Plaintiff's amended complaint is properly verified under 28 U.S.C. § 1746. (Dkt. No. 19 at 16.)

*Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  Where a party is proceeding *pro se*, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, "a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999)[5] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV.    PLAINTIFF'S FAILURE TO COMPLY FULLY WITH N.D.N.Y.  L.R. 7.1(a)(3)

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the statement of material facts filed by Defendants in the manner required under N.D.N.Y.  L.R.  7.1(a)(3) by neglecting to set forth a specific citation to the record in a number of instances where he appears to dispute a statement included in the statement of undisputed facts.[6]  (See Dkt. Nos. 81-2 and 84.)

Where a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y.  L.R. 7.1(a)(3), the facts in the movant's statement to which

---

[5]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[6]  L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts.  Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises."

Plaintiff has not properly responded will be accepted as true (1) to the extent they are supported by evidence in the record,[7] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[8]  *See Champion, v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).  In deference to Plaintiff's *pro se* status and the significant degree of effort he has shown in his response to Defendants' material statement of facts (Dkt. No. 84), the Court has opted to review the entire record.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.     Legal Standard

Montgomery, Burgess, and Lopez seek summary judgment on Plaintiff's Eighth Amendment conditions of confinement claim against them on the ground that Plaintiff failed to exhaust his administrative remedies under the DOCCS Inmate Grievance Procedure ("IGP") with

---

[7]  L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." However, *see Vermont Teddy Bear Co., Inc. v. 1 800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[8]  Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion.  (Dkt. No. 81 at 2.)

regard to the claim.  Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted). In New York State prisons, DOCCS has a well-established three-step IGP.  *See* N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence.  *Id*. § 701.5(a)(1).  A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

Special procedures are used when the grievance involves a claim of staff misconduct. *Id*. § 701.8. A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. *Id*. § 701.8(f). If the grievant wishes to appeal a decision by the Superintendent to CORC, he must file a notice of decision to appeal with the inmate grievance clerk at the bottom of the Superintendent's decision within seven days of receipt of the decision. *Id*. § 701.8(h). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.8(i) (incorporating § 701.5).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. §

11

701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure

by the IGRC or the superintendent to timely respond to a grievance . . . can    and must    be

appealed to the next level . . . to complete the grievance process.").   Exhaustion under the

DOCCS IGP is not complete until the grievance has been appealed to CORC and CORC has

issued a decision.  *See Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001), *overruled on other*

*grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *Singh v. Goord*, 520 F. Supp. 2d 487, 495

(S.D.N.Y. 2007) ( complete exhaustion to CORC, the highest level, is required).

    While the PLRA mandates exhaustion of administrative remedies, it also "contains its

own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically,

section 1997e(a) provides that only those administrative remedies that "are available" must first

be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion

requirement hinges on the availability of administrative remedies[.]" (quotations and citations

omitted)).   In the PLRA context, the Supreme Court has determined that "availability" means

that "an inmate is required to exhaust those, but only those, grievance procedures that are capable

of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotations

and internal citations omitted).

    The *Ross* Court identified three circumstances in which a court may find that internal

administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end    with officers unable or consistently unwilling to

provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be

so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.  *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements.  *See Jones,* 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), *overruled on other grounds, Woodford*, 548 U.S. at 94-95.  Plaintiff must then establish that the DOCCS IGP was unavailable to him. *See Jones*, 549 U.S. at 216.

 **B.** **Analysis**

  1. <u>Plaintiff's Failure to Exhaust His Administrative Remedies</u>

Fishkill had a fully functioning inmate grievance procedure during the time Plaintiff was housed at the facility.  (Dkt. No. 81-7 at ¶ 12.)  Fishkill IGP supervisor, Sally Reams ("Reams"), has submitted a declaration describing the DOCCS IGP procedures followed at Fishkill.  (*See generally* Dkt. No. 81-9.)  According to Reams, she reviewed the records in the Fishkill grievance office where all documents or copies thereof related to a particular grievance dating back to January 1, 2013, are maintained.  *Id*. at ¶¶ 9, 12.  Her review revealed that Plaintiff was housed at Fishkill from August 3, 2016, to October 31, 2016, and during that time did not file any grievance related to a denial of six meals at Fishkill between August 3, 2016, and October

24, 2016.[9]  *Id*. at ¶ 13.

Joseph Cieslak ("Cieslak"), IGP supervisor at Mohawk Correctional Facility ("Mohawk"), to which Plaintiff was moved on October 31, 2016, has described the manner in which the DOCCS IGP is followed at Mohawk.  (*See generally* Dkt. No. 81-8.)  Cieslak reviewed the grievance records in the grievance office at Mohawk and determined that Plaintiff had not filed any formal grievances while at Mohawk.  *Id*. at ¶¶ 9-12.

Rachael Seguin, Assistant Director of the DOCCS IGP, has also submitted a declaration in support of Defendants' motion.  (Dkt. No. 81-7.)  Seguin is the custodian of records maintained by CORC.  *Id*. at ¶ 2.  The CORC database contains files on inmate appeals to CORC for the current year and the previous four calendar years.  *Id*. at ¶ 7.  Seguin reviewed the CORC database for appeals related to Plaintiff's claim in this action and determined that he has never appealed a grievance to CORC.  *Id.* at ¶¶ 10-11 and pp. 7-8.

The Court finds that the Reams declaration is deficient in showing that Plaintiff failed to file grievances with regard to any of the missed meals since it indicates only that her review of the grievance office records showed that Plaintiff did not file a grievance related to "a denial of meals on six occasions between August 3, 2016 and October 3, 2016."  (Dkt. Nos. 81-3 at 38-39; 81-9 at ¶ 13.)  However, inasmuch as the Seguin declaration and attached printouts from the CORC database establish that Plaintiff has never filed any appeals with CORC, the Court finds that Defendants have met their burden of establishing that Plaintiff failed to exhaust

---

[9] The Court notes that Reams does not indicate in her declaration whether Plaintiff filed any grievances regarding one or more individual missed meal, or a grievance regarding a number other than six missed meals.  (*See* Dkt. No. 81-9 at ¶ 13.)  Moreover, Reams has used the dates in Plaintiff's amended complaint rather than the corrected dates in his deposition testimony for the time span during which the missed meals occurred used by her in her review.  *Id.*

his administrative remedies with regard to his Eighth Amendment conditions of confinement

claim that he was deprived of five meals by Defendants. *See Jones*, 549 U.S. at 218 (proper

exhaustion under the PLRA means using all steps required by the applicable administrative

review process).

        2.    <u>Plaintiff's Failure to Sustain His Burden on Availability</u>

The Court also finds that Plaintiff has failed to submit nonconlusory evidence of

unavailability under *Ross* sufficient to raise a material issue of fact on the question of availability

of the DOCCS IGP.  In his amended complaint, Plaintiff alleges ". . . also at Fishkill my SHU

appel mail was not go out and my grievance was not go out I was denied food at Fishkill five

times in the SHU. . . ."  (Dkt. No. 19 at 9.)  Plaintiff further alleges "[o]n August 3, 2016 I was

transfer from Green facility to Fishkill facility I don't know if Green facility write note to Fishkill

facility because same day on June 3, 2016 [August 3, 3016 ?] I was denied chow the next day I

was denie on June 4, 2016 [August 4. 2016?]  I write grievance I never receive my grievance

respond. . . ."  *Id*. at 11.

At his deposition, Plaintiff testified he filed grievances for "any matter that's not

procedure" and "for [his] right" and never received a response.  (Dkt. No. 81-3 at 60.)  According

to Plaintiff, he filed grievances regarding missed meals at Fishkill.  *Id*. at 73.  Plaintiff described

the procedure followed in the Fishkill SHU whereby inmates give grievances to the corrections

officer who comes around and drops the grievances in a basket and claims that the officers only

send out the mail they want to send out.  *Id*. at 74.  Plaintiff claims to have filed grievances all

the time and believes that they probably did not go out because he never received a response.  *Id*.

Plaintiff testified he wrote to the superintendent about the food situation because he had

not heard back from the I.G.R.C.  *Id*. at 75.  The superintendent wrote back and told him to

appeal his decision.  *Id*. at 78.  According to Plaintiff, the superintendent told him to appeal to

CORC regarding how many times he was denied food in SHU, so he wrote to CORC and

retained a copy as was his practice and never received a response.  *Id*. at 77-78.

In his declaration in reply to the Reams declaration, Plaintiff states that the Fishkill

grievance office failed to respond to his grievance of the Eighth Amendment violation.  (Dkt. No.

84-1 at 2.)  In his declaration in response to the Cieslak declaration, Plaintiff states that Cieslak

never filed or responded to any of Plaintiff's grievances at Mohawk.  *Id*. at 4.  In his declaration

in response to the Seguin declaration, the only grievance referenced is a grievance dated June 21,

2017.  *Id*. at 6.  Although not admissible evidence, Plaintiff repeats in his response to

Defendants' material statement of facts that his grievances regarding being denied meals were

taken but not sent to the grievance office.  (Dkt. No. 84 at ¶ 54.)

Plaintiff has done nothing more than allege in conclusory fashion that he attempted to file

one or more grievances concerning the denial of meals.  He has provided no evidence that he

actually did write grievances; when they were written; the content of the grievances, including

the specific denial of meals involved in the grievance; the officers named in the grievance(s) as

involved in the denials; the specific steps taken by Plaintiff to provide them to an officer to send

to the grievance office; and any specific follow up with the grievance office at Fishkill regarding

the grievances.  Plaintiff has submitted no documentary evidence whatsoever that supports his

conclusory assertion that he submitted grievances regarding the denial of meals or demonstrates

any follow up on his part when he allegedly received no response.

The Court concludes that Plaintiff's conclusory accusations that the DOCCS IGP was

unavailable to him because his grievances were not sent to the grievance office by the officers who picked them up and because he did not receive a response from CORC, unsupported by evidence, are insufficient to withstand summary judgment. *See Rodriguez v. Cross,* No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have consistently held that mere contentions or speculations of grievances being misplaced by officers do not create a genuine issue of material fact [on the availability of the DOCCS IGP] when there is no evidence to support the allegations"); *Khudan v. Lee*, No. No. 12-cv-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016) ("Plaintiff's accusations [regarding grievances], which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment") (quoting *Bolton v. City of New York*, No. 13-CV-5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. April 20, 2015)).

Based upon the foregoing, the Court recommends that all three Defendants be granted summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies with regard to his Eighth Amendment claim.

## VI.     Eighth Amendment Claim Regarding Missed Meals

The Court is recommending that Defendants be granted summary judgment on exhaustion grounds.  However, if the Court were to consider Defendants claim for entitlement to judgment as a matter of law, it would recommend summary judgment as a matter of law on Plaintiff's Eighth Amendment conditions of confinement claim as well.

### A.     Legal Standard for Eighth Amendment Conditions of Confinement Claims for Depriving an Inmate of Meals

The Eighth Amendment "imposes the constitutional limitation upon punishments: they

cannot be 'cruel and unusual.'" *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).  The Eighth

Amendment prohibits punishments which "involve the unnecessary and wanton infliction of

pain."  *Id*. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "Among 'unnecessary

and wanton' inflictions of pain are those that are 'totally without penological justification."  *Id*.

(quoting *Gregg,* 428 U.S. at 183).

  The Second Circuit has held that the Constitution requires that prisoners be fed

nutritionally adequate food and "under certain circumstances a substantial deprivation of food

may well be recognized as being of constitutional dimension."  *Robles v. Coughlin*, 725 F.2d 12,

15 (2d Cir. 1983); *see also Jackson v. Marks*, 722 F. App'x 106, 107 (2d Cir. 2018) (Mem)

("[A] substantial deprivation of food can cause serious physical harm sufficient to find cruel and

unusual punishment in violation of the Eighth Amendment.") (citation and internal quotation

marks omitted).

  In order to establish a claim that the denial of food constitutes an Eighth Amendment

violation, a prisoner must establish that a "sufficiently serious condition" resulted from not

receiving food.  *Evans v. Albany County Correctional Facility*, No. 9:05-CV-1400 (GTS), 2009

WL 1401645, at *9 (N.D.N.Y. May 14, 2009) (citation and internal quotation marks omitted).

To prove a conditions of confinement claim, a prisoner must also establish that defendant acted

with deliberate indifference   that defendant "knows of and disregards an excessive risk to

inmate health or safety*."  Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "[T]he [defendant] must both be aware of facts

from which the inference could be drawn that a substantial risk of harm exists, and he must also

draw that inference."  *Id*. at 186 (quoting *Farmer, id*.).  The "deliberate indifference" element is

equivalent to standard of "recklessness" as used in criminal law. *Id*.

**B.    Analysis**

Plaintiff claims to have missed a total of five meals over a period of fifty-three days as a result of the actions of the Defendants and never to have missed more than one meal on a given day. (Dkt. No. 81-3 at 19, 21, 26-27, 80.) Plaintiff contends Defendant Burgess denied him dinner on August 3 and August 4, 2016; Montgomery denied him lunch on September 10, 23, and 24, 2016; and Lopez with Montgomery denied him lunch on September 24, 2016. (Dkt. No. 81-3 at 19, 21, 27, 32-33, 42, 44, 55-56.) Neither Burgess nor Montgomery has any recollection of interactions with Plaintiff on the days he was allegedly denied meals. (Dkt. Nos. 81-4 at ¶ 20; 81-5 at ¶ 5.)

According to Lopez, she only withheld a meal from Lopez on one occasion because he was lying on his bed under a sheet either asleep or pretending to be asleep. (Dkt. No. 81-6 at ¶¶ 11, 16.) Lopez did not deliver his meal because he was not standing at his door fully dressed as required. *Id*. at ¶ 12. A review of the logbook by Lopez revealed that the denial occurred on September 24, 2016. *Id*. at ¶¶ 14-15. Lopez stated in her declaration that it was not uncommon for Plaintiff to pretend to be asleep during meals so that he could then allege he had been denied the meal and use the allegations to be disrespectful to officers and rile up the inmates. *Id*. at ¶ 13.

The Court finds that denying Plaintiff a single meal, as alleged against Lopez, does not rise to the level of a violation of Plaintiff's rights under the Eighth Amendment. *See Cabassa v. Oshier*, No. 9:11-CV-01237 (MAD/CFH), 2015 WL 5094802, at *5 (N.D.N.Y. Aug. 28, 2015) (denial of a single meal fails to plausibly state an Eighth Amendment claim); *Pagan v. Quiros*, No. 3:11-cv-1134 (DJS), 2014 WL 1057016, at *6 (D. Conn. Mar. 18, 2014) (holding that

allegation of denial food and drink at one meal "does not constitute a substantial or sufficiently serious deprivation of a basic human need"); *Hankerson v. Nassau County Correctional Facility*, No. 12-CV-5282 (SJF) (WDW), 2012 WL 6055019, at *4 (E.D.N.Y. Dec. 4, 2012) (holding that denial of a single meal "falls far short of a 'substantial deprivation of food' and does not give rise to the level of a constitutional deprivation.").

The Court likewise concludes that Burgess's alleged denial of Plaintiff's dinner on August 3 and 4, 2016, and Montgomery's alleged denial of Plaintiff's lunch on September 10, 23, and 24, 2016, did not rise to the level of a violation of Plaintiff's rights under the Eighth Amendment. One missed meal a day has been found insufficient to establish an Eighth Amendment claim. *See Benitez v, Locastro*, No. 04-CV-423, 2008 WL 4767439, at *7 (N.D.N.Y. Oct. 29, 2008) (claim of one missed meal a day insufficient to establish an Eighth Amendment claim); *Johnson v. Merriman*, No. 1:13-cv-00087-MP-GRJ, 2015 WL 1409529, at *4 (N.D. Fl., Gainesville Div. March 26, 2015) (where the most each of three defendants could have personally deprived plaintiff of meals was one meal a day for a period of three days, the denial of the meals was not sufficiently severe to rise to the level of a constitutional violation).

Moreover, Plaintiff has failed to submit evidence showing that a "sufficiently serious condition" resulted from not receiving food. *See Evans*, 2009 WL 1401645, at *9. Plaintiff testified at his deposition that he was hungry and emotionally frustrated as a result of not having dinner on August 3, 2016, after having failed to make himself breakfast and traveled all day with only a small lunch en route. (Dkt. No. 81-3 at 26.) Plaintiff was hungry and emotionally frustrated after not receiving lunch on September 10, 2016, as well. *Id*. at 37.

In sum, the evidence supports a finding by the Court that the claimed denial of meals by

each of the three Defendants falls short of that required to support an Eighth Amendment

violation, and the evidence does not support a finding that Plaintiff suffered a sufficiently serious

condition from any of the three Defendants' denial of a meal or meals.

      **ACCORDINGLY**, it is hereby

      **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 81) be

**GRANTED**; and it hereby

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the

Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**<u>PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: June 25, 2018
      Syracuse, New York

                                         Thérèse Wiley Dancks
                                         United States Magistrate Judge

---

[10]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2008 WL 4767439
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Henry BENITEZ, Plaintiff,

v.

J. LOCASTRO, Lt., et al., Defendants.

No. 9:04-CV-423.
|
Oct. 29, 2008.

West KeySummary

**1**    **Prisons**
☞ Hazardous and Unhealthful Conditions;
Housing

**Prisons**
☞ Clothing and Grooming;Bedding and
Sleeping Conditions

**Sentencing and Punishment**
☞ Sanitation

An inmate did not state a viable claim
under the Eighth Amendment. The inmate's
allegation that officers threw dirty mop
water into his cell and overflowed his
toilet constituted no more than de minimis
actions best described as harassment, not
cruel and unusual punishment. U.S.C.A.
Const.Amend. 8; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**Attorneys and Law Firms**

Henry Benitez, Malone, N.Y., pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Senta B. Suida, Esq., Assistant Attorney
General, of Counsel, Albany, N.Y., for Defendants.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1**  The above matter comes to me following a Report-
Recommendation by Magistrate Judge Randolph F.
Treece, duly filed on the 25th day of October 2008.
Following ten days from the service thereof, the Clerk has
sent me the file, including any and all objections filed by
the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
objections submitted thereto, it is

ORDERED that:

1. The Report-Recommendation is hereby adopted in its
entirety.

2. The Clerk is ordered to dismiss the
following defendants: Amberman, Christopher, Colon,
Easterbrook, Kessel, Konecny, Lennox, Leonello,
Loomis, Maccucci, McNamara, Melindez, Meyers, [1]
(C.O.) Miller, Murley, Parmiter, Porten, Quinn, Roux,
Sgt. Smith, Wilkinson, and Yorkey.

3. Discovery is closed and the dispositive motion deadline
is extended to December 28, 2008.

4. The Clerk of the Court shall serve a copy of this Order
upon all parties and the Magistrate Judge assigned to this
case.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate
Judge.

*Pro se* Plaintiff Henry Benitez filed this civil rights action,
pursuant to 42 U.S.C. § 1983, alleging violations of his
constitutional rights as guaranteed by the First, Eighth,
and Fourteenth Amendments. Presently before the Court
is a Motion for a Judgment on the Pleadings pursuant
to FED. R. CIV. P. 12(c) brought by thirty-eight (38) [1]
of the forty-seven (47) Defendants, (Dkt. No. 94), as well
as Plaintiff's Motion for Sanctions pursuant to FED. R.

CIV. P. 37 (Dkt. No. 97). For the reasons that follow, it is recommended that Plaintiff's Motion for Sanctions be **denied,** and that Defendants' Motion for Judgment on the Pleadings be **granted in part** and **denied in part.**

## I. MOTION FOR SANCTIONS

In an attempt to ascertain the names of the seven John Doe Defendants, Plaintiff served Defendants' counsel with his First Request for Production of Documents in July 2005, and thereafter filed his First Motion to Compel production of those documents on August 8, 2005. Dkt. No. 65. On January 25, 2006, the Court denied that Motion as moot based on a determination that the Defendants had substantially complied with Plaintiff's discovery requests. Dkt. No. 82. Plaintiff filed a Motion for Reconsideration of that Order, asserting several objections to the Defendants' Discovery Response. Dkt. No. 68. Plaintiff subsequently filed Second and Third Motions to Compel, demanding that the Defendants respond to his Interrogatories to Discover Identities of Defendants and Request to Enter Upon Property for Inspection and Photographing of Property. Dkt. Nos. 79 & 80.

The Court addressed Plaintiff's Motion for Reconsideration and his Second and Third Motions to Compel in a August 29, 2006 *omnibus* Order. Dkt. No. 88. With respect to the Motion for Reconsideration, the Court stated that "insofar as Plaintiff ... seeks an order ... directing Defendants to provide [him] with copies of the responsive documents at no cost to Plaintiff, his Motion must be denied." The Court also noted that the "Defendants must make the documents identified as responsive to Plaintiff's discovery requests available to Plaintiff for his review." Dkt. No. 88 at p. 5. We granted Plaintiff's Second and Third Motions to Compel, directing the Defendants to serve written responses to Plaintiff's Interrogatories to Discover Identities of Defendants and Request to Enter Upon Property for Inspection and Photographing of Property. Dkt. No. 88.

**\*2** On October 9, 2006, Plaintiff filed a Motion for Sanctions against Defendants for failure to comply with the Court's August 29, 2006 Order. Dkt. No. 89. On June 12, 2007, the Court denied that Motion for Sanctions without prejudice, but ordered Defendants to comply with the August Order within 30 days. Dkt. No. 91. Defendants

filed a Status Report on August 3, 2007, stating that Plaintiff was served with their Response to his Request to Enter Upon Property for Inspection and Photographing of Property and Objects, and that as part of that Response, six videotapes were forwarded to the administration at Upstate Correctional Facility ("Upstate") for Plaintiff's viewing. Dkt. No. 92.

On October 31, 2007, Plaintiff filed the instant Motion for Sanctions, alleging that Defendants have not provided him with the opportunity to review the documents produced in their Response to his First Request for Production of Documents, [2] nor the opportunity to view the videotapes referenced in Defendants' August 3rd Status Report. Dkt. No. 97. Plaintiff asserts that this inaction on the Defendants' part has prevented him from learning the full names of Defendants Correction Officer (C.O.) Smith [3] and John Does # 1-7. In his Motion for Sanctions, Plaintiff seeks a default judgment against the Defendants that have filed an Answer to the Complaint. *Id.* at p. 10.

Defendants respond that Plaintiff was provided an opportunity to review their responsive documents to his First Request for Production of Documents at Upstate on December 11, 2007, but that he refused to view them. Dkt. No. 100 at ¶ 5. Defendants have attached to their Response to Plaintiff's Motion for Sanctions two blank Acknowledgment Forms with the notation "Refused to review or sign," and an unidentifiable signature below said notation. *Id.*, Exs. A & B, dated Dec. 11, 2007. In his Reply to Defendants' Response, Plaintiff contends that he was never given the opportunity to review such documents and at no point refused to do so. Dkt. No. 103 at ¶ 4.

With respect to the videotapes, Defendants assert that Plaintiff had the opportunity to view them, and have attached to their Response an Acknowledgment Form signed by Henry Benitez, acknowledging that he viewed six videotapes at Upstate on December 11, 2007. Dkt. No. 100, Ex. C. Plaintiff admits in his Reply that he viewed the videotapes. [4] Dkt. No. 103 at ¶ 3.

Thus, there is a disagreement as to whether Plaintiff has been afforded the opportunity to review the documents produced in response to his First Request for Production of Documents. In our August 29, 2006 Order, we directed that the "Defendants must make the documents identified

as responsive to Plaintiff's discovery requests available to Plaintiff for his review," though we noted that Plaintiff must pay for any copies of said documents. Dkt. No. 88 at p. 5. The Defendants' duty to make these documents available to Plaintiff is ongoing, and therefore, regardless of whether Plaintiff refused to view the documents on December 11, 2007, he is still entitled to review them and request that copies be made at his expense.

**\*3** Thus, Defendants are ordered to continue to make their responsive documents available for Plaintiff to review and to copy at his own expense. However, Plaintiff's Motion for Sanctions in the form of a default judgment in his favor is **denied.**

## II. MOTION FOR A JUDGMENT ON THE PLEADINGS

### A. Standard of Review

FED. R. CIV. P. 12(c) provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b) (6)." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly,* 550 U.S. 544, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999); *see also Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (citations omitted). Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6) ], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference ... and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs.,* 2003 WL 22169779, at \*1 (N.D.N.Y. Aug.27, 2003) (internal quotation marks and citations omitted)

(alterations in original). A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005).

### B. Unserved Defendants and Defendant Officer Considine

Under FED. R. CIV. P. 4(c)(1), a plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m). [5] Failure to properly serve any defendant in accordance with the Federal Rules will cause the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

Defendants contend that the seven (7) John Doe Defendants named in the Amended Complaint, along with C.O.s Smith and Miller, should be dismissed for failure to provide service of process. Plaintiff responds that the Defendants' failure to comply with the Court's June 12, 2007 Order directing them to respond to Plaintiff's outstanding discovery requests, (Dkt. No. 91), has prevented him from ascertaining the identities of the John Does and C.O.s Miller and Smith, (Dkt. No. 104 at p. 2).

**\*4** The June 12, 2007 Order directed compliance with our August 29, 2006 Order. The August Order addressed Plaintiff's Motions to Compel responses to his (1) First Request for Production of Documents, (2) Request to Enter Upon Property For Inspection and Photographing of Property and Objects, and (3) Interrogatories to Discover Identities of Defendants. Dkt. No. 88. As to the first, we have already noted that there is a dispute as to whether Plaintiff has been afforded the opportunity to review the Defendants' responsive documents. With respect to the second, Plaintiff has acknowledged that he was served with the Defendants' Response to his Request to Enter Upon Property For Inspection and Photographing of Property and Objects. Dkt. No. 97 at ¶ 23. Oddly, neither party has addressed in their respective Motions presently before this Court whether the Defendants have responded to Plaintiff's Interrogatories to Discover Identities of Defendants, [6] nor whether Plaintiff has had the opportunity to review any such response, though Plaintiff has made the general

assertion that Defendants have not complied with this Court's June 12, 2007 Order.[7] Dkt. No. 100 at p. 2.

Thus, questions exist as to whether Plaintiff has indeed been provided the opportunity to review the Defendants' responsive documents to his First Request for Production of Documents and whether the Defendants have complied with this Court's August 29, 2006 and June 12, 2007 Orders to respond to Plaintiff's Interrogatories to Discover the Identities of Defendants. Defendants' Motion for Judgment on the Pleadings with respect to these unserved Defendants is therefore **denied without prejudice** at this juncture.[8]

As we have already stated, Defendants are under a continuing obligation to abide by this Court's previous Orders mandating that they respond to Plaintiff's discovery requests and provide him with the opportunity to review those responses and any documentary evidence attached thereto. To the extent that the Defendants have thus far not responded to any of Plaintiff's discovery requests, including his Interrogatories to Discover the Identities of Defendants, they are ordered to do so *within thirty (30) days* of the date this Report-Recommendation and Order is filed with the Clerk. Plaintiff is reminded that he is not entitled to free copies of any document the Defendants produce, only the opportunity to review them. The Dispositive Motion deadline is extended to December 28, 2008.

Defendants also argue that Defendant Considine should be dismissed from the action because Plaintiff did not name him in his Amended Complaint. Dkt. No. 5. However, Considine is a named Defendant on the docket, the Answer, and the Amended Answer, and has been served with process. Dkt. No. 39. Plaintiff made specific allegations against Considine in his Amended Complaint, Dkt. No. 5-3 at ¶¶ 57-61, and states that he intended to name Considine therein, Dkt. No. 104 at p. 4. Because Considine has been put on notice as to Plaintiff's charges against him, and was clearly intended by Plaintiff to be a named Defendant, we recommend that Defendants' Motion to Dismiss be **denied** in that respect.

**C. Eighth Amendment Claims**

**\*5** Plaintiff makes several claims that his rights under the Eighth Amendment were violated. We consider these claims *seriatim*.

### 1. *Harassment*

Plaintiff claims that on several different dates, dirty mop water was thrown on him by the following Defendants: Considine, Crozier, and Martens on August 8, 2002; Crozier on August 13 and 20, 2002; Defendants G. Maccucci and Chilson on August 17 & 24, 2002; Sergeant (Sgt.) Smith and G. Maccucci on August 20, 2002; Maccucci and Martens on August 29, 2002; Defendant Roux on August 21, 2002; Defendant Leonello on August 26, 2002; and M. Kessel on August 11, 17, and 30, 2002. Am. Compl. at ¶¶ 37, 57, 62-65, 76, & 79. Plaintiff also claims Defendant Leonello "shut off the electricity and the sink and toilet['s] running water" in his cell, and that Porten and McNamara overflowed his toilet. *Id.* at ¶¶ 27 & 78.

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir.1999) (internal quotations omitted) (citing *Hudson v. McMillan,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

Regarding the objective element of our Eighth Amendment analysis, "a *de minimis* use of force will rarely suffice to state a constitutional claim [.]" *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (quoted in *Hudson v. McMillian,* 503 U.S. at 10). Furthermore, "a claim under 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Govan v. Campbell,* 289 F.Supp.2d 289, 300 (N.D.N.Y.2003).

The allegation that officers threw dirty mop water into Plaintiff's cell and overflowed his toilet, even assuming they are true, constitute no more than *de minimis* actions best described as harassment, not cruel and

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4767439

unusual punishment, and therefore fall short of meeting the objective component of the Eighth Amendment standard. *See, e.g.,* *McFadden v. Solfaro,* 1998 WL 199923 (S.D.N.Y. Apr.23, 1998) (prisoner's claim that a corrections officer regularly threw coffee, juice, and water into his cell was not a triable cause of action under the Eighth Amendment); *see also* *Samuels v. Hawkins,* 157 F.3d 557 (8th Cir.1998) (prison guard's actions of throwing a liquid at plaintiff that did not harm him in any way were de minimis). Furthermore, Plaintiff's assertion that Leonello shut off the electricity and running water on August 16, 2002, without any indication as to how long those alleged deprivations lasted, is conclusory and should be **dismissed.** *Jemzura v. Public Service Com'n,* 961 F.Supp. 406, 413 (N.D.N.Y.1997) (citing *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987) for the proposition that "[e]ven a pro se Complaint must be dismissed if it contains only conclusory, vague or general allegations") (internal quotations omitted). To the extent Plaintiff is asserting he was deprived of electricity and running water only on August 16, 2002, that allegation fails to state a claim under the objective prong of the Eighth Amendment and should be **dismissed.** *See, e.g.,* *McFadden v. Solfaro,* 1998 WL 199923, at *13 (S.D.N.Y. Apr.23, 1998) (claim that water was shut off for two three-day stints did not trigger a constitutional controversy).

**\*6** Plaintiff also claims that on July 9, 2002, Defendants Chilson, Colon, Considine, Porten, McNamara, and Smith,

> threw urine and dirty mop water on Benitez through an opening of the cell's observation window and through the cell's air vent on the ceiling. These defendants then (a) rapidly and repetitiously struck the metal sheet cover of the cell's observation window with batons and large metal objects; (b) repeatedly switched on and off the tubular fluorescent light of the cell; (c) repeatedly overflowed the toilet and sink in the cell; (d) repeatedly made death threats to Benitez; and (e) willfully and wantonly denied Benitez requested medical care and treatment, clothes, clean mats, bed linen, and toilet tissue.

Am. Compl. at ¶ 37.

As previously discussed, Plaintiff's claims with respect to the mop water, threats, and other harassments do not state viable claims under the Eighth Amendment and should therefore be **dismissed.** With respect to Plaintiff's claims concerning the denial of medical care, clothes, clean mats, bed linen, and toilet tissue, he has failed to plead enough facts that would enable the Defendants to respond thereto. Plaintiff does not identify what his medical needs were or what medical treatment he was denied, nor does he describe the circumstances of the other alleged deprivations, how long they lasted, or how these Defendants were involved. Thus, these claims are conclusory and should be **dismissed.** *Jemzura v. Public Service Com'n,* 961 F.Supp. at 413.

## 2. Denial of Meals

Plaintiff claims that on January 28, 2002, Defendants C.O. Smith and Barnska denied him breakfast and lunch, respectively, and that Defendants Wilkinson, Chilson, Yorkey, Murley, Easterbrook, Loomis, Quinn, Christopher, Roux, and Meyers either denied him a meal on one or more occasion, or approved the denial of a meal on one or more occasion during the month of August 2002. Am. Compl. at ¶¶ 18, 22-23, 68-75, 77, & 80. With exception to his claims concerning January 28th, Plaintiff does not allege he was denied more than one meal on any one day. [9]

The Second Circuit has held that "under certain circumstances a *substantial deprivation* of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (emphasis added) (citation omitted). Such a substantial deprivation creates an Eighth Amendment claim if it "presents an immediate danger to the inmate's health or well-being." *Chapdelaine. v. Keller,* 1998 WL 357350, at *12 (N.D.N.Y. Apr.16, 1998) (citations omitted).

It has been held in this district that "[w]hen a prison guard deprives a prisoner of *two* of the regularly three meals served each day, the objective prong of the Eighth Amendment may be met if the defendants do not satisfy their burden of showing that the one meal served is nutritionally adequate." *Beckford v. Portuondo,* 151

F.Supp.2d 204, 213 (N.D.N.Y.2001) (emphasis added) (citing *Cunningham v. Jones,* 567 F.2d 653, 660 (6th Cir.1977)). Plaintiff has alleged that on January 28, 2002, he was wantonly deprived breakfast and lunch. Am. Compl. at ¶¶ 18 & 22. Therefore, he has stated a valid claim under both prongs of the Eighth Amendment standard and should not be dismissed at this stage of the litigation.

**\*7** However, Plaintiff's remaining meal deprivation claims do not involve more than one missed meal on any given day. Furthermore, Plaintiff does not allege that he was deprived of a substantial amount of food on those days. Am. Compl. at ¶¶ 23, 68-75, 77, & 80. Nor does Plaintiff allege that the overall amount of food he received on those dates was nutritionally inadequate, or that his health was otherwise placed in jeopardy as a consequence of those deprivations. Plaintiff has therefore failed to state a claim under the objective prong of the Eighth Amendment standard, and it is therefore recommended that this claim be **dismissed.** *See McLeod v. Scully,* 1984 WL 692, at \*2 (S.D.N.Y. July 30, 1984) (provision of two meals per day for eight to ten consecutive days during a lockdown did not constitute an Eighth Amendment violation); *cf. Williams v. Coughlin,* 875 F.Supp. 1004 (W.D.N.Y.1995) (allegation of deprivation of five *consecutive* meals over two days created a question of material fact).

### 3. *Deprivation Orders*

Plaintiff claims that Defendants Bradt and Chilson either approved or issued unspecified deprivation orders causing Plaintiff to be without the following items and services from July 9 through July 14, 2002: all in-cell property, pen, bed sheets, mattress, toilet tissue, running water, showers, exercise periods, and law library services. Am. Compl. at ¶ 51. Plaintiff also claims that from July 14 through July 25, 2002, and from July 25 through August 8, 2002, Defendants Bradt, Chilson, and Martens approved or issued more unspecified orders depriving him of the same items and services listed above. [10] *Id.* at ¶¶ 53 & 55.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294,

297-99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation omitted) (cited in *Branham v. Meachum,* 77 F.3d 626, 630-31 (2d Cir.1996)).

Although Plaintiff has failed to discuss why the alleged deprivation orders were imposed, he has stated that he was willfully and wantonly deprived of, *inter alia,* running water, toilet tissue, showers, and bedding for a period of nearly one month. Thus, notwithstanding the lack of factual allegations regarding the circumstances of the deprivation orders, Plaintiff has stated that he was deliberately denied the "minimal civilized measure of life's necessities." *See, e.g., Bellezza v. Fischer,* 2006 WL 3019760, at \*4 (S.D.N.Y. Oct.24, 2006) ("Water that is suitable for drinking and bathing is undeniably one of 'life's necessities,' and ... the Eighth Amendment therefore requires that it be supplied to inmates."); *cf. Barnes v. Craft,* 2007 WL 1017307, at \*12 (N.D.N.Y. Mar.30, 2007) (dismissing Eighth Amendment claim, stating that "[c]onspicuously missing from Plaintiff's ... Complaint are any allegation that ... he was denied food, clothing, bedding, heat, running water, showers, toiletries[.]"). Therefore, Plaintiff has presented a facially valid Eighth Amendment claim, and it is recommended that the Defendants' Motion be **denied** in that respect.

### 4. *Medical Indifference Claims*

**\*8** To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834-35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway I,* 37 F.3d at 66). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992)).

Benitez v. Locastro, Not Reported in F.Supp.2d (2008)
2008 WL 4767439
Case 9:16-cv-00885-FJS-TWD    Document 88    Filed 06/25/18    Page 28 of 82

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

Plaintiff claims that on July 2, 2002, Defendant Lennox ignored his complaints about an injury to his head caused by inadequate air flow in his cell. Am. Compl. at ¶ 25. Plaintiff also claims that on August 20, 2002, "Maccucci willfully and wantonly refused to allow Dr. Graceffo to examine [Plaintiff's] wrist injuries without handcuffs," and then refused to allow a nurse to examine his blood pressure. *Id.* at ¶ 63. Plaintiff has not alleged he was suffering from a serious medical condition in either instance. Rather, he states generally that he suffered from a "head injury" and "wrist injuries." [11] Plaintiff has not described the circumstances of Lennox's alleged denial of medical care, nor the duration of that denial. Finally, he has not asserted what harm, if any, resulted from Maccucci's refusal to take off his handcuffs and allow a nurse to take his blood pressure. Therefore it is recommended that these claims be **dismissed.**

**\*9** Plaintiff also claims that "[f]rom September 2002 to June 2004, Defendants M. Melindez and E. Amberman willfully ignored [Plaintiff's] repeated requests for psychiatric care and treatment" for severe cramps in his stomach and pain in his wrists, legs, and ankles, for auto immune hypothyroidism, for a cold and fever, and for severe headaches and emotional distress. Am. Compl. at ¶¶ 84-85. Here again, Plaintiff does not allege the circumstances or dates of Melindez and Amberman's alleged repeated denials of medical care. Instead, Plaintiff asserts in conclusory fashion that Melindez and Amberman denied him medial care for a laundry list of physical and mental ailments over a period of almost two years. Therefore, it is recommended that these claims be **dismissed.** *See Jemzura v. Public Service Com'n,* 961 F.Supp. at 413.

## D. Retaliation Claims

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official___even those otherwise not rising to the level of a constitutional violation___can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

### 1. Grievances

Plaintiff claims that from August 8, 2002 through September 12, 2002, Defendant Parmiter refused to file several of his Grievances in retaliation for a Grievance Plaintiff had previously filed against her. [12] *Id.* at ¶ 86. "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (citing *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988)). Thus, Plaintiff has

alleged he was involved in a constitutionally protected conduct.

However, Plaintiff has failed to plead sufficient facts to allege a causal connection between the alleged adverse action and his protected conduct. Notably, there is no allegation as to when Plaintiff filed the Grievance that was the cause of the alleged retaliation. *See Dawes v. Walker, 239 F.3d at 492* (finding that plaintiff's failure "to set forth a time frame for the alleged events ... precludes inference of a causal relationship.") (citation omitted). Also, Plaintiff fails to allege how, or if, that Grievance was ultimately resolved. In sum, this claim is conclusory and should be **dismissed.**

### 2. *Harassment/Denial of Meals*

 **\*10** Plaintiff claims that on August 8, 2002, Considine, Crozier, and Martens "willfully and wantonly threw dirty mop water on Benitez ... in retaliation for his having complained on that same day" to an investigator employed by the New York State Inspector General about many of the allegations brought in his Amended Complaint. Am. Compl. at ¶ 57. Plaintiff also claims that on "August 26, 2002, Defendant Leonello wantonly threw dirty mop water" on him in retaliation for a Grievance Plaintiff filed against him earlier that month. *Id.* at ¶ 79. Finally, Plaintiff claims that on January 28, 2002, C.O. Smith denied him breakfast in retaliation for complaining about a plexiglass shield on his cell bars. *Id.* at ¶ 22.

These claims are also conclusory. As to Plaintiff's claims about mop water and a denied meal, he does not allege the form or circumstances of his "complaints" to the investigator and C.O. Smith, respectively. Regarding his claim against Leonello, Plaintiff does not identify the nature of the Grievance he allegedly filed against Leonello. In none of these cases does Plaintiff provide any factual allegations to support a causal connection between the alleged adverse actions and Plaintiff's conduct. *See Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir.2000)* (stating that retaliation claims "must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.") (internal quotation marks and citation omitted). Therefore, it is recommended that these claims be **dismissed.** [13]

### 3. *False Misbehavior Report*

Plaintiff claims that on January 27, 2002, Defendant J. Wilkinson filed a false Misbehavior Report against him and denied Plaintiff his evening meal and shower on that date in retaliation for Plaintiff's complaints to him about the conditions in his cell. [14] Am. Compl. at ¶ 18. Plaintiff has failed to adequately allege that he was involved in constitutionally protected conduct as he does not define the form, date, or circumstances of his complaints to Wilkinson. Nor does Plaintiff allege any facts that could lead to an inference of a causal connection between his conduct and the alleged adverse actions. Therefore, it is recommended that these claims be **dismissed.**

### E. Other Claims

#### 1. *Comments and Threats*

Plaintiff claims that on July 9, 2002, Defendants Chilson, Colon, Considine, Martens, Porten, McNamara, and Smith threatened him. Am. Compl. at ¶¶ 27 & 37. "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under *42 U.S.C. § 1983*." *Moncrieffe v. Witbeck, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000)* (quoting *Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y.1998)*). Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v. Austin, 901 F.Supp. 757, 763 (S.D.N.Y.1995)*).

 **\*11** Thus, this claim should be **dismissed.**

#### 2. *False Reports/Medical Entries*

Plaintiff alleges Defendants Wilkinson, McNamara, and Konecny filed false Misbehavior Reports against him and that Defendant Lieutenant (Lt.) Miller wrote a false memo about the availability of a video tape for a Disciplinary Hearing. Am. Compl. at ¶¶ 3, 18, 27, & 40. Plaintiff also alleges that Defendant Martens filed a Misbehavior Report against him, though he does not allege that said Misbehavior Report was falsified or otherwise improper.

*Id.* at ¶ 26. Finally, Plaintiff alleges that Defendant Nurses Lennox and Smith wrote false statements in his medical record. *Id.* at ¶¶ 25 & 32.

There is "no general constitutional right to be free from being falsely accused in a misbehavior report." [15] *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *see also Gill v. Riddick,* 2005 WL 755745, at *7 (N.D.N.Y. Mar.31, 2005). Therefore, Plaintiff's claims that false Misbehavior Reports were filed against him should be **dismissed** to the extent they are raised as constitutional violations in and of themselves. [16] Also, Plaintiff's allegation that Martens filed a Misbehavior Report against him, without more, does not state a valid claim for relief and should be **dismissed**. Finally, Plaintiff's claims that Defendants Lennox and Smith falsified his medical records should also be **dismissed**. [17] *See Diaz v. Goord,* 2006 U.S. Dist. LEXIS 14309, at *20 (W.D.N.Y. Mar. 20, 2006) (allegation of false medical entries did not state a valid claim).

### 3. *Grievances*

Plaintiff claims that Parmiter prevented him from filing a Grievance "in order to prevent him from suing the defendants[,]" and that Parmiter refused to allow him to appeal another Grievance he filed. [18] Am. Compl. at ¶¶ 13 & 21. In *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988), the Second Circuit emphasized that inmates "must be permit[ted] free and uninhibited access ... to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers." 854 F.2d at 589 (alterations in original) (internal quotation marks and citations omitted). Notwithstanding some recent District Court caselaw suggesting otherwise, the Second Circuit in *Franco* was clearly placing a prisoner's right of redress of *administrative* grievances on par with a prisoner's right to seek redress in *judicial forums* when it held that "[l]ike the right of access to the courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed regardless of the procedural means applied.' " *Id.* (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987) and further noting that "intentional obstruction of a prisoner's right to seek redress of rievances is precisely the sort of oppression that ... section 1983[is] intended to remedy"); *cf. Harnett*

*v. Barr,* 538 F.Supp.2d 511 (N.D.N.Y.2008) (indicating that while prisoners have a constitutional right to petition the government for redress of grievances, there is no duty incumbent upon any state to provide an administrative grievance procedure for prisoners, and thus, "[n]either a state's violation of those procedures, nor the failure to enforce them gives rise to a claim under section 1983."); *contra Johnson v. Barney,* 2007 WL 900977, at *1 (S.D.N.Y. Mar.22, 2007) (stating that obstructing the filing of a grievance is not tantamount to obstructing an inmate's constitutional right to access the courts). Because the Second Circuit has determined this right to petition a substantive, rather than procedural, right, the Court is bound to analyze Plaintiff's claim as a First Amendment right to access the courts, and not a procedural due process violation.

**\*12** In this regard, it is well established that "prisoners have a constitutional right to access the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). To establish standing for a claim for denial of right of access, an inmate must show that he has suffered an actual injury traceable to the challenged conduct of prison officials-that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis v. Casey,* 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Benitez has failed to allege that Parmiter's alleged refusal to process his grievance(s) resulted in some prejudice to Plaintiff filing a nonfrivolous legal action. Thus, to the extent Benitez claims his substantive constitutional right of access to the courts has been violated, such claim should be **dismissed**.

### F. Personal Involvement/Supervisory Liability

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz,* 1997 WL 576038, at *2 (S.D.N.Y. Sept.15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Plaintiff alleges that Burge reviewed Grievances he filed on January 26 and 27, 2002, and that Eagen reviewed the same January 26th Grievance; that he complained to Defendants Kneeland and Burge about injuries he sustained on July 9, 2002; and that Burge and Sgt. Smith approved of Defendant Roux's alleged improper act of throwing dirty mop water on Plaintiff on August 21, 2002. [19] Am. Compl. at ¶¶ 16-17, 20, 38, & 76. Plaintiff alleges that in each instance these Defendants failed to remedy the alleged constitutional violations that occurred.

We have already recommended dismissal of Plaintiff's claims against Roux for his alleged improper act of throwing mop water on Plaintiff. *See supra* Part II.C(1). The subject matter of Plaintiff's January 27, 2002 Grievance was Wilkinson's alleged filing of a false Misbehavior Report, a claim we have already recommended for dismissal. *See supra* Part II.E(2). Therefore, Plaintiff's supervisory liability claims against Burge and Sgt. Smith should be **dismissed** with respect to those allegations.

**\*13** The subject matter of Plaintiff's January 26, 2002 Grievance was the conditions of his confinement and injuries he allegedly suffered as a consequence. Am. Compl. at ¶ 15. Plaintiff alleges that Eagen and Burge reviewed that Grievance and failed to provide a remedy. Defendants do not challenge the adequacy of Plaintiff's underlying allegations, but rather, assert that Burge and Eagen were not personally involved in the alleged violations. However, Plaintiff has alleged that Burge received, reviewed, and failed to remedy a Grievance. Therefore, he has stated a valid claim for supervisory liability against Burge with respect to those allegations, and it is recommended that the Defendants' Motion be **denied** as to those claims. *See Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. Dec.6, 2002) ("Personal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievance or otherwise *reviews and responds* to a prisoner's complaint.") (emphasis added and citations omitted).

Conversely, Plaintiff's claims that he "complained" to Kneeland and Burge about all of the alleged constitutional violations that occurred on July 9, 2002, and that they failed to remedy those problems, does not state a valid claim. *Id.* at ¶ 38. Plaintiff has not pled sufficient facts about the circumstances of his complaints to Kneeland and Burge in order to allow them to respond to a claim based on supervisory liability. Specifically, Plaintiff has not alleged the nature or substance of his complaint, nor whether that complaint was somehow acted on by these Defendants. *See Johnson v. Wright*, 234 F.Supp.2d at 363. To the extent Plaintiff is stating simply that Kneeland and Burge were aware of the alleged constitutional violations and failed to provide a remedy, that claim must fail. *Id.* at 364 (S.D.N.Y. Dec. 6, 2002) ("Mere awareness of a constitutional violation ... is insufficient to impose liability."). Therefore, these claims of supervisory liability against Kneeland and Burge are conclusory and fail to state a claim upon which relief can be granted, and it is recommended that they be **dismissed.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendants' Motion for Judgment on the Pleadings (Dkt. No. 94) be **GRANTED**

**IN PART** and **DENIED IN PART** in accordance with the above recommendations; and it is further

**RECOMMENDED,** that should the District Court adopt this Report-Recommendation, the Clerk be ordered to dismiss the following Defendants: Amberman, Christopher, Colon, Easterbrook, Kessel, Konecny, Lennox, Leonello, Loomis, Maccucci, McNamara, Melindez, Meyers, R. (C.O.) Miller, Murley, Parmiter, Porten, Quinn, Roux, Sgt. Smith, Wilkinson, and Yorkey; and it is further

**ORDERED,** that Plaintiff's Motion for Sanctions (Dkt. No. 97) is **DENIED.** Defendants, however, should continue to make their responsive documents available for Plaintiff to review and copy at his own expense; and it is further

**\*14 ORDERED,** that, to the extent Defendants have not responded to any of Plaintiff's discovery requests, including his Interrogatories to Discover the Identities of Defendants, they are ordered to do so *within thirty (30) days* of the filing date of this Report-Recommendation and Order; and it is further

**ORDERED,** that the Dispositive Motion deadline is extended to December 28, 2008; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4767439

---

Footnotes

1   Defendant Meyers was listed incorrectly as Meyers, R. in the Report-Recommendation.

1   The thirty-nine (38) Defendants on whose behalf the Motion for a Judgment on the Pleadings is brought are: Amberman, Baranska, Burge, Chilson, Christopher, Colon, Eagen, Easterbrook, Kessel, Kneeland, Konecny, Lennox, Leonello, Loomis, Maccucci, Martens, McNamara, Melindez, Meyers, Lt. Miller, Murley, Parmiter, Porten, Quinn, Roux, Nurse R. Smith, Sgt. Smith, Wilkinson, Yorkey; and unserved Defendants C.O. Miller, C.O.Smith, and John Does # 1-7. Dkt. No. 94-2, Mem. of Law, at p. 7.

2   We note that Plaintiff's Motion for Sanctions actually asserts that to date, he has not been provided "a *response* to his First Request for Production of Documents[.]" Dkt. No. 97 at ¶ 26 (emphasis added). The record belies that claim. Plaintiff objected to the sufficiency of the Defendants' Response to his First Request for Production of Documents in his Motion for Reconsideration (Dkt. No. 83) of the Court's January 25, 2006 Order denying his first Motion to Compel (Dkt. No. 82). Thus, we assume Plaintiff is asserting that he has not been provided the opportunity to review the Defendants' responsive documents.

3   C.O. Smith is one of three "Smith" Defendants in this action, along with Sergeant (Sgt.) Smith and Nurse R. Smith. C.O. Smith is named "R. Smith" on the docket, however, in order to keep these Smiths discrete, we will refer to him as C.O. Smith.

4   Plaintiff also makes a new allegation that he was not allowed to take notes while viewing the videos. Dkt. No. 103 at ¶¶ 3 & 5.

5   Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y. .R .4.1(b).

6   These Interrogatories were directed only to Defendant M. Bradt, identified by Plaintiff as the Deputy Superintendent at Auburn Correctional Facility. Dkt. No. 5 at p. 7. The Interrogatories seek to identify the corrections officers involved in incidents that allegedly occurred on January 28, July 9, July 11, and August 20, 2002, in the Auburn Special Housing Unit. The dates identified in these Interrogatories correspond with Plaintiff's claims against John Does # 1-7 regarding incidents that allegedly occurred on July 9 and July 11, 2002. *See* Dkt. No. 5, Am. Compl. at ¶¶ 26-35 & 45.

7    Plaintiff's claim in that respect is at least partly false. The June 12, 2007 Order directed Defendants to comply with the August 29, 2006 Order, which directed them to respond to Plaintiff's outstanding discovery requests, namely, his Interrogatories to Discover Identities of Defendants and his Request to Enter Upon the Property for Inspection and Photographing of Property, which were the subjects of his Second and Third Motions to Compel, respectively. *See* Dkt. No. 88 at pp. 6-7. Plaintiff has acknowledged receipt of the Defendants' Response to his Request to Enter Upon the Property for Inspection and Photographing of Property. Dkt. No. 97 at ¶ 24 (stating he received that Response on August 6, 2007.).

8    However, we recommend C.O. Miller's dismissal for other reasons. *See infra* Part II.C.2.

9    Furthermore, in several instances, it is unclear whether Plaintiff is claiming he was not given a meal at all, or just not provided a special "restricted diet" meal. *See* Am. Compl. at ¶¶ 68-69, 71, 74-75, & 80. We presume Plaintiff is asserting he was not fed a meal at all on those dates.

10   In addition to the items listed, Plaintiff asserts he was denied "a water bucket" from July 25 though August 8, 2002. Am. Compl. at ¶ 55.

11   With respect to the alleged wrist injuries, Plaintiff states that on several dates *after* August 20, 2002, his shackles and handcuffs were applied too tight and he suffered nerve damage as a consequence. Am. Compl. at ¶¶ 59-61. He also asserts that on August 17, 2002, he suffered nerve damage to his right ankle. *Id.* at ¶ 58. Defendants have not challenged those allegations in the present Motion.

12   We consider whether a claim of failure to file a grievance, without more, states a valid claim under § 1983 in Part II.E.3.

13   This recommendation is without prejudice to Plaintiff's Eighth Amendment claim against C.O. Smith regarding the deprivation of meals on January 28, 2002. *See supra* Part II.C.2.

14   We consider whether the filing of a false misbehavior report itself is a constitutional violation in Part II.E.2, *supra.*

15   However, inmates may have a valid cause of action where a false misbehavior report is filed in retaliation for the exercise of a constitutional right. *See, e.g., Gill v. Riddick,* 2005 WL 755745, at *7; *see also supra* Part II.D.3.

16   Plaintiff's claim against Lt. Miller concerns the availability of a video during a Disciplinary Hearing. Defendants have not challenged the viability of the underlying due process claim, and therefore, Plaintiff's claim against Miller should be dismissed only to the extent he is alleging a constitutional violation stemming from Miller's act of writing a false memo, and without prejudice to Plaintiff's claim that he was wrongly denied documentary evidence at the Disciplinary Hearing.

17   Plaintiff also alleges that Nurse Smith failed to provide him medicine while he was experiencing extreme pain *See* Am. Compl. at ¶ 32. That claim has not been addressed by the Defendants, and it is not recommended for dismissal.

18   Plaintiff's retaliation claims regarding his thwarted attempts to file Grievances are considered above in Part II.D.1.

19   Defendants have not addressed Plaintiff's claims that Defendants Burge, Kneeland, Rourke, Gummerson, and Wolczyk approved and upheld the imposition of the deprivation orders discussed above in Part II.C(3). *See* Am. Compl. at ¶¶ 51-56. Because we have recommended that Plaintiff's underlying claims regarding the alleged deprivation orders not be dismissed, we do not recommend that these supervisory claims be dismissed.

---

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5094802
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Samuel CABASSA, Plaintiff,

v.

Christina OSHIER, Clerk II, Individually and
official capacity; Dale A. Artus, Supt. Clinton
C.F. Individually and official capacity; Thomas
L. LaValley, Supt. Clinton C.F. Individually and
official capacity; New York State Department of
Correctional Services; E. Blaise, Registered Nurse,
Individually and official capacity; S. Miller, Nurse
Practitioner, Individually and official capacity;
Mark Maxon, Optometrist, Individually and
official capacity; Officer Jennette, Correctional
Officer, Individually and official capacity; Officer
Ezro, Correctional Officer, Individually and
official capacity; John Kilburn, [1] Correctional
Officer, Individually and official capacity; Max
Patnode, Deputy Superintendent for Programs,
Individually and official capacity; B. Lecuyer, Nurse
Administrator, Individually and official capacity;
Nurse Badger, Registered Nurse, Individually
and official capacity; Kang Maeng Lee, Medical
Doctor, Individually and official capacity; Vonda
Johnson, Medical Doctor, Individually and official
capacity; John A. Doe, Correctional Sergeant,
Individually and official capacity; John B. Doe,
Correctional Officer, Individually and official
capacity; John C. Doe, Correctional Officer,
Individually and official capacity; John D. Doe,
Correctional Officer, Individually and official
capacity; John E. Doe, Correctional Officer,
Individually and official capacity; John F. Doe,
Correctional Officer, Individually and official
capacity; John G. Doe, Docs Utilization Review
Committee, Individually and official capacity;
John H. Doe, Docs Utilization Review Committee,
Individually and official capacity, Defendants.

No. 9:11–CV–01237 (MAD/CFH).
|

Signed Aug. 28, 2015.

**Attorneys and Law Firms**

Samuel Cabassa, Alden, NY, pro se.

Office of the New York, State Attorney General, Gregory
J. Rodriguez, AAG, o%f Counsel, Albany, NY, for
Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

*1 Plaintiff *pro se* Samuel Cabassa ("Cabassa"),
commenced the present action pursuant to 42 U.S.C.
§ 1983, alleging that he was denied adequate care
and accommodations, in violation of his Eighth and
First Amendment rights, when Defendants failed to
provide him with appropriate treatment concerning his
partial blindness and other visual impairments. *See*
Dkt. No. 1. Plaintiff's allegations span an approximate
two-year period, from October 2008 to late December
2010, and are comprised of claims against multiple
Defendants including, the New York State Department
of Corrections and Community Supervision ("DOCCS"),
fourteen DOCCS employees, and eight John Does. *See
id.* Additionally, Plaintiff asserts claims pursuant to 42
U.S.C. § 12132, the Americans with Disabilities Act
("ADA"), and 42 U.S.C. § 794, the Rehabilitations
Act ("RA"). *See id.* at 52–56. Primarily, Plaintiff seeks
compensatory and punitive damages for the alleged
violations.

In a Report–Recommendation and Order, Magistrate
Judge Hummel recommended that the Court grant in part
and deny in part Defendants' motion to dismiss certain
Defendants and claims pursuant to Fed.R.Civ.P. 12(b)(6).
*See* Dkt. No. 49. On March 21, 2013, the Court granted
in part Defendants' motion to dismiss. *See* Dkt. No. 52.
As a result of the Court's March 21, 2013 Memorandum–
Decision and Order, the following claims remain: (1)
Eighth Amendment medical deliberate indifference claims
against Defendants Blaise, Oshier, Johnson, Lee, Jennette,
and Badger; (2) ADA and RA claims against Defendant
DOCCS; and (3) First Amendment denial of access to the
courts claim against Defendants Oshier, Miller, Maxon,
Johnson, and Lecuyer. *See id.* at 19.

Cabassa v. Oshier, Not Reported in F.Supp.3d (2015)
Case: 9:16-cv-00885-FJS-TWD   Document 88   Filed 06/25/18   Page 35 of 82
2015 WL 5094802

On December 12, 2014, Defendants moved for summary judgment on all claims except for Plaintiff's Eighth Amendment claims of excessive force brought against Defendant John Kilburn. *See* Dkt. No. 93. In a July 13, 2015 Report–Recommendation and Order, Magistrate Judge Hummel recommended that the Court grant the motion as to the following claims and Defendants: (1) Eighth Amendment Medical deliberate indifference claims against Defendants Oshier, Blaise, Miller, Dr. Maxon, Lecuyer, Badger, Dr. Lee, Ezero, LaValley, Artus, and Dr. Johnson; (2) First Amendment denial of access to the courts claims against Defendants Oshier, Miller, Dr. Maxon, Lecuyer, and Dr. Johnson; (3) First Amendment retaliation claims against Defendants Oshier, Miller, Dr. Maxon, Dr. Johnson, Lecuyer, Ezero, Jennette, and LaValley; (4) ADA and RA claims against Defendant DOCCS; (5) all claims against the John Doe Defendants; (6) Eighth Amendment claims against Defendants LaValley and Artus regarding Plaintiff's admission to the mental health observation unit; (7) First Amendment claims against Defendants LaValley and Artus regarding Plaintiff's admission to the mental health observation unit; and (8) qualified immunity as to Defendants Oshier, Blaise, Miller, Dr. Maxon, Lecuyer, Badger, Dr. Lee, and Dr. Johnson. *See* Dkt. No. 100 at 65. Further, Magistrate Judge Hummel recommended that the Court deny the motion as to the following claims and Defendants: (1) Eighth Amendment medical indifference claims against Defendants Jennette and Patnode; (2) First Amendment claims against Defendant Patnode; and (3) qualified immunity as to Defendants Jennette and Patnode. *See id.* Finally, Magistrate Judge Hummel recommended that Defendants Oshier, Blaise, Miller, Dr. Maxon, Lecuyer, Badger, Dr. Lee, Ezero, LaValley, Artus, and Dr. Johnson be dismissed from this action. *See id.* at 66.

**\*2** On August 13, 2015, Defendants filed objections to Magistrate Judge Hummel's Report–Recommendation and Order. *See* Dkt. No. 105. Specifically, Defendants objected to the recommended denial of summary judgment for the following reasons: "(1) the inclusion of First Amendment claims against defendant Patnode at Part IV(2) of the R & R appears to have been made in error, as no such claim was alleged in the Complaint, addressed in defendants' summary judgment motion, or mentioned in the court's analysis of plaintiff's First Amendment claims; (2) the court overlooked a number

of material submissions advanced on behalf of defendants Jennette and Patnode in respect of plaintiff's Eighth Amendment medical indifference claims; and (3) the court overlooked a number of material submissions advanced on behalf of defendants Jennette and Patnode in respect to their entitlement to qualified immunity. *See id.* at 1–4.

Currently before the Court is Magistrate Judge Hummel's July 13, 2015 Report–Recommendation and Order. *See* Dkt. No. 100.

## II. BACKGROUND

The Court assumes the parties' familiarity with the relevant factual background in this matter and, to the extent consistent with the record, adopts the factual recitation contained in Magistrate Judge Hummel's July 13, 2015 Report–Recommendation and Order.

## III. DISCUSSION

### A. Standard of review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (citations omitted). When analyzing a summary judgment motion, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers,* 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement;

rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**\*3** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, \*1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Cary v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on

appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a pro se party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

## B. Relief under 42 U.S.C. § 1983

**\*4** Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

## C. First Amendment claims against Defendant Patnode

In their objections, Defendants first contend that Magistrate Judge Hummel erred in recommending denying Defendants' motion for summary judgment as to the First Amendment claim against Defendant Patnode. *See* Dkt. No. 105 at 2. Specifically, Defendants assert that Plaintiff did not bring a First Amendment claim against Defendant Patnode, which is why it was not addressed

Case: 9:16-cv-00885-FJS-TWD    Document 88    Filed 06/25/18    Page 37 of 82
Cabassa v. Osher, Not Reported in F.Supp.3d (2015)
2015 WL 5094802

in their motion for summary judgment. *See id.* Rather, Defendants claim that the first reference that is ever made to such a claim is in the section of the Report–Recommendation and Order entitled "Conclusion ." *Id.* (citing Dkt. No. 100 at 65).

Upon review, the Court agrees with Defendants that Plaintiff did not bring a First Amendment claim against Defendant Patnode. The mention of such a claim in the conclusion of the Report–Recommendation and Order appears to be no more than a scrivener's error. Accordingly, the Court rejects the Report–Recommendation and Order insofar as it implies a First Amendment cause of action against Defendant Patnode.

### D. Claims against Defendant Patnode
In their objections, Defendants contend that the Report–Recommendation and Order incorrectly asserted that Defendants failed to address the medical indifference claims against Defendant Patnode. *See* Dkt. No. 105 at 3. Defendants assert that Plaintiff's submissions, as well as his deposition testimony, make clear that Defendant Patnode is only alleged to have denied Plaintiff reasonable accommodations and, therefore, he is subject to dismissal because there is no individual liability under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act ("RA"). *See id.*

The Court agrees with Defendants that the undisputed evidence clearly demonstrates that Defendant Patnode was only named as a Defendant in this action because of his alleged denial of reasonable accommodations. *See* Dkt. No. 93–4 at 172–74. In his deposition, Plaintiff makes clear that the only interactions he had with Defendant Patnode were the denial of Plaintiff's requests for alleged reasonable accommodations. *See id.* Since the Court finds no error with Magistrate Judge Hummel's recommendation to grant Defendants' motion as to Plaintiff's ADA and RA claims, the Court finds that Defendant Patnode must be dismissed as well.

**\*5** Even if the Court were to find that Plaintiff was still attempting to pursue an Eighth Amendment deliberate indifference claim against Defendant Patnode, such a claim must nevertheless be dismissed. The undisputed evidence demonstrates that, at best, Plaintiff is asserting a disagreement with Defendant Patnode over the care he was provided, which is insufficient to support an Eighth Amendment claim. *See Cole v. Levitt,* No. 07–cv–767,

2009 WL 4571828, \*9 (W.D.N.Y. Dec.4, 2009) (citation omitted). Further, the allegations in the complaint and the undisputed evidence fail to support the subjective element of such a claim. *See id.* at \*2 (citations omitted); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citation omitted).

Based on the foregoing, the Court finds that any Eighth Amendment claims Plaintiff attempted to assert against Defendant Patnode are *sua sponte* dismissed. *See Smith v. Conway,* 582 Fed. Appx. 45, 46 (2d Cir.2014) (affirming the district court's *sua sponte* grant of summary judgment against a *pro se* plaintiff where the facts before the district court were fully developed) (citation omitted).

### E. Claims against Defendant Jennette
Defendants contend that Magistrate Judge Hummel incorrectly determined that the Court should deny the motion for summary judgment as to the Eighth Amendment deliberate indifference claim. *See* Dkt. No. 105 at 3–4. Specifically, Defendants assert that this "recommendation is based on the mistaken finding that there was a genuine issue of material fact as to whether defendant Jennette acted deliberately indifferent to plaintiff's serious medical need by refusing to honor valid feed-in-cell passes issued by Miller on October 21, 2008 and Blaise on November 20, 2008." *Id.* at 3. While Defendants do not dispute that Plaintiff was issued feed-in-cell passes, they contend that the Report–Recommendation and Order "overlooks the fact that defendants took the decision to lift plaintiff's feed-in-cell permit and there was a valid basis for doing so." *Id.*

Defendants are correct that Defendant Blaise lifted the feed-in-cell permit on November 25, 2008, which provided Defendant Jennette a valid reason to require Plaintiff to eat his meals in the mess hall from that point forward. *See* Dkt. No. 94 at 24–25. In his complaint, however, Plaintiff alleges that on November 20, 2008, Defendant Jennette began ignoring the feed-in-cell permit, causing Plaintiff to miss breakfast. *See* Dkt. No. 1 at ¶¶ 6(41)–6(43). Although Plaintiff alleges in a conclusory fashion that he was "subjected to an involuntary hunger strike by being starved," he fails to provide any other dates on which he missed a meal, or even how many meals he missed. *See id.* at ¶¶ 6(41)–6(55). Having identified only a single missed meal prior to Defendant Blaise revoking the feed-in-cell permit, Plaintiff has failed to plausibly set forth an Eighth Amendment claim against Defendant

Jennette. See *Pagan v. Quiros,* No. 3:11–cv–1134, 2014 WL 1057016, *6 (D.Conn. Mar.18, 2014) (holding that the plaintiff's allegation that the defendant denied him food and drink at one meal "does not constitute a substantial or sufficiently serious deprivation of a basic human need") (citations omitted); *Hankerson v. Nassau County Correctional Facility,* No. 12–CV–5282, 2012 WL 6055019, *4 (E.D.N.Y. Dec.4, 2012) (holding that an inmate's claim that "he missed a single meal falls far short of a 'substantial deprivation of food' and does not rise to the level of a constitutional deprivation"); *Waring v. Meachum,* 175 F.Supp.2d 230, 240–41 (D.Conn.2001) (holding that there is no Eighth Amendment claim where inmates missed one or two meals and there was no indication that future meals were missed).

**\*6** Alternatively, the Court finds that Defendant Jennette is entitled to qualified immunity as to this claim. Defendant Jennette's decision to require Plaintiff to eat his meals in the mess hall was based on the fact that a registered nurse—Defendant Blaise—determined that Plaintiff has "no medical restrictions" that would preclude him from eating in the mess hall. See Dkt. No. 94 at 24–25. It was objectively reasonable for Defendant Jennette, a corrections officer, to rely on the determination of a trained medical professional.

Based on the foregoing, the Court grants Defendants motion for summary judgment as to this claim.

### F. The Report–Recommendation and Order's remaining recommendations

The Court has reviewed the remainder of the findings in Magistrate Judge Hummel's Report–Recommendation and Order and finds no clear error.

### G. Plaintiff's untimely objections and response to Defendants' motion

On August 26, 2015, the Court received Plaintiff's objections to Magistrate Judge Hummel's Report–Recommendation and Order, as well as Plaintiff's 86 page "opposition" to Defendants' motion for summary judgment and 701 pages of attached exhibits. See Dkt. No. 108. While Plaintiff's objections are only untimely by 5 days, Plaintiff's "opposition" to the motion for partial summary judgment was untimely by 191 days. Defendants filed their motion on December 12, 2014. See Dkt. No. 93. On December 29, 2014, the Court granted

Plaintiff an additional thirty (30) days to respond. See Dkt. No. 97. After the deadline for Plaintiff's response had already passed, the Court received another letter motion requesting an additional seven (7) days to file his response, which the Court granted, thereby resetting the response deadline to February 17, 2015. See Dkt. Nos. 98–99. Notably, in that letter request, Plaintiff stated as follows: "I swear to the Court that by February 6, 2015, my opposition moving papers will be deposited in the mail box." Dkt. No. 98 at 2. Magistrate Judge Hummel did not issue his Report–Recommendation and Order until July 13, 2015—147 days after Plaintiff's twice extended time to respond had expired. During that 147 day period, the Court received no correspondence from Plaintiff.

Although the Court acknowledges that it has an " 'obligation ... to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training,' " *Brunson v. Jonathan,* 677 F.Supp.2d 640, 642 (W.D.N.Y.2010) (quotation omitted), this obligation is not without limits. Plaintiff's failure to respond to the motion for summary judgment deprived Defendants of their opportunity to reply to his response. Moreover, Plaintiff's failure to respond resulted in Magistrate Judge Hummel engaging in an analysis that would have otherwise not been required—*i.e.,* scouring Plaintiff's fifty-nine (59) page verified complaint to determine if it raised any questions of material fact. Now, 191 days after Plaintiff's response deadline expired, and after Magistrate Judge Hummel spent countless hours drafting his thorough Report–Recommendation and Order, Plaintiff has finally submitted his response. The special solicitude that the Court is required to extend *pro se* Plaintiff's does not extend so far as to warrant the consideration of Plaintiff's untimely filings. Although Plaintiff acknowledges in his objections that his opposition to the motion for summary judgment was "not introduce[d] before Magistrate Judge Hummel," he fails to provide any explanation for the entirely unacceptable and prejudicial delay. Without any explanation, Plaintiff has failed to provide the Court with any reason establishing good cause and excusable neglect so that it should consider this extremely untimely and prejudicial submission. See *Johnson v. Bureau of Prisons,* 30 Fed. Appx. 935, 937 (10th Cir.2002) (holding that the denial of *pro se* federal inmate's untimely request for additional time to file response to federal officials' motion for summary judgment on inmate's *Bivens* claims, and finding that summary judgment motion was uncontested,

was not abuse of discretion where inmate was previously granted generous two-month extension of time to respond to motion, took no action to explain predicament to court during two-month period in which he was aware that he lacked access to or did not have copy of motion, and waited three months after response was due to request extension); *Barnes v. Dedmondt,* No. 4:08–cv–0002, 2009 WL 3166576, *5 n. 6 (D.S.C. Sept.29, 2009) (declining to consider the *pro se* plaintiff's response to the motion for summary judgment where the plaintiff was granted numerous extension to respond over a period of months, yet failed to timely respond), *aff'd* 395 Fed. Appx. 928 (4th Cir.2010); *Mortensbak v. Butler,* ___ F.Supp.3d 2015 WL 797679, *2 (D.S.D.2015) (refusing to consider *pro se* inmate's untimely response to police officers' motion for summary judgment, in inmate's § 1983 action alleging that officers used excessive force in course of his arrest; even assuming prison mailbox rule applied to response, document was filed five days after expiration of time period for responding to motion for summary judgment, inmate made no separate motion for extension of time to file response, and inmate made no effort to show good cause or excusable neglect in late-filed response).

 **\*7** Based on the foregoing, the Court declines to consider Plaintiff's untimely submissions in opposition to Defendants' motion for partial summary judgment. *See Johnson,* 30 Fed. Appx. at 937.

## IV. CONCLUSION

After carefully considering Magistrate Judge Hummel's Report–Recommendation and Order, Defendants' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's July 13, 2015 Report–Recommendation and Order is **ADOPTED in part and REJECTED in part** as set forth herein; [2] and the Court further

**ORDERS** that Defendants' motion for partial summary judgment is **GRANTED;** [3] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5094802

Footnotes

1    The Clerk of the Court is directed to amend the caption in this case to reflect that Defendant John Kilburn was incorrectly sued herein as "Milburn."

2    Magistrate Judge Hummel's Report–Recommendation and Order is rejected insofar as it finds that the Court should not dismiss the First and Eighth Amendment claims against Defendant Patnode and the Eighth Amendment claims against Defendant Jennette.

3    As a result of this Memorandum–Decision and Order, the only remaining claim is Plaintiff's Eighth Amendment claims of excessive force against Defendant Kilburn.

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

**\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the
gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky, 5* F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174

F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenci,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*' s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

**B. *Constitutional Claim***
It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

*Conclusion*
For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III,

Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS:ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

 **\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated his
Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and
telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at
73-72.

II. PROCEDURAL HISTORY

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

1. Legal Principles Governing
Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ––– Fed.Appx. –––, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to

render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance,[7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone.[8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Slip Copy, 2017 WL 986123

**Eleby v. Smith, Slip Copy (2017)**

2017 WL 986123

Footnotes

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9    In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1401645
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Orrel EVANS, Plaintiff,

v.

ALBANY COUNTY CORRECTIONAL FACILITY;
Mary Kay Weis, Kitchen Supervisor; James
Campbell, Sheriff; T. Rockwell, ISU; Gloria
Cooper, Medical Supervisor; and Thomas
Wigger, Jail Administrator, Defendants.

No. 9:05–CV–1400.
|
May 14, 2009.

**Attorneys and Law Firms**

Orrel Evans, Coxsackie, NY, pro se.

Thuillez, Ford, Gold, Butler & Young LLP, Kelly M. Monroe, Esq., of Counsel, Albany, NY, for Defendant Gloria Cooper.

Roche, Corrigan McCoy & Bush, Robert P. Roche, Esq., of Counsel, Albany, NY, for Remaining Defendants.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court in this *pro se* prisoner civil rights action are (1) Defendant Cooper's motion for summary judgment (Dkt. No. 53), (2) the remaining Defendants' motion to dismiss for failure to state a claim and/or for summary judgment (Dkt. No. 54), (3) United States Magistrate Judge David E. Peebles's Report–Recommendation recommending that Defendant Cooper's motion be granted, and that the remaining Defendants' motion be granted in part and denied in part (Dkt. No. 66), and (4) Defendants' timely Objections to the Report–Recommendation (Dkt. No. 67). For the reasons set forth below, the Report–Recommendation is adopted in part, Defendants' motions for summary judgment are granted in their entirety, and Plaintiff's Second Amended Complaint is dismissed in its entirety.

## I. BACKGROUND

### A. Relevant Procedural History

On November 9, 2005, Plaintiff filed this action against Albany County Correctional Facility ("ACCF") and five individuals employed by Albany County. On July 13, 2007, Plaintiff amended his Complaint for the second time. (Dkt. No. 27.) Generally, in his Second Amended Complaint, Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments by failing to provide him on a regular basis with a vegetarian diet which, he maintains, was necessitated by both an allergy to certain foods and his genuinely held religious beliefs. (*Id.*) More specifically, Plaintiff alleges that this failure (1) infringed upon his right to freely exercise his chosen religion, as guaranteed by the First Amendment to the United States Constitution, (2) exposed him to cruel and unusual punishment and/or deliberate indifference to a serious medical need, in violation of the Eighth Amendment, and (3) denied him equal protection under the law, as guaranteed under the Fourteenth Amendment. (*Id.*)

On October 2, 2007, Defendants filed their Answer to Plaintiff's Second Amended Complaint. (Dkt. No. 31.) On May 15, 2008, Defendant Gloria Cooper filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No. 53.) The next day, the remaining Defendants filed a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and, in the alternative, a motion for summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No. 54.)

On January 30, 2009, Magistrate Judge Peebles issued a Report–Recommendation recommending that Defendants' motions be granted in part and denied in part. (Dkt. No. 66.) Specifically, Magistrate Judge Peebles recommended that (1) all claims against Defendant Cooper be dismissed, (2) all claims against Defendant ACCF be dismissed, (3) Plaintiff's Fourteenth Amendment claim be dismissed, and (4) a trial be held on Plaintiff's remaining First and Eighth Amendment claims because of the existence of genuine issues of material fact. Familiarity with the grounds of the Report–Recommendation is assumed in this Decision and Order.

On February 12, 2009, Defendants (other than Defendant Cooper) filed their Objections to the Report–Recommendation. (Dkt. No. 67.)

**B. Undisputed Material Facts**

**\*2** Plaintiff was incarcerated at the ACCF on June 30, 2005. Upon intake, the staff at ACCF performed a medical screening of Plaintiff. During his screening, Plaintiff filled out a medical history and screening form. [1] On the form (which he signed), Plaintiff indicated that he had no allergies, medical or otherwise, and further indicated that he did not require any special diet. On July 3, 2005, Plaintiff submitted a Health Services Request Form to the medical department. [2] This form did not reference any special/vegetarian diet.

On July 5, 2005, Plaintiff sent a letter to the Inmate Services Unit ("ISU"), in which he indicated—for the first time—that he was a vegetarian. [3] Generally, there are at least four separate types of vegetarian diets offered at ACCF. [4] In addition, there are at least three separate "vegetarian style" diets, which either include the use of fish, cheese or eggs. [5]

On July 7, 2005, Plaintiff submitted a second Health Services Request Form, which again made no reference to any special/vegetarian diet. [6] However, on July 8, 2005, Plaintiff submitted a third Health Services Request Form that did indicate that he was a vegetarian, in addition to being allergic to meat and eggs. [7] On that same day, the medical department wrote an order for Plaintiff to receive a vegetarian diet. [8]

On July 20, 2005, Plaintiff submitted a letter to Defendant Rockwell at ISU, in which he complained that it took "years" for him to get his food. [9] On July 29, 2005, Plaintiff submitted a letter to ISU, indicating that he was not receiving the proper meals, even though the medical department had indicated that he was a vegetarian. [10] On that same day, ISU provided the letter to the kitchen supervisor and to the medical department. ISU also sent a letter to Plaintiff, informing him that his letter had been sent to the "kitchen and medical supervisor," and that his card on his "tier is marked for a rasafarian [sic] vegitarian [sic] diet." [11]

On July 30, 2005, the medical department prepared a Special Diet Request Form for Plaintiff, which indicated that Plaintiff should receive a vegetarian diet, and should

not receive any animal products. [12] However, according to Plaintiff, on August 5, 2005, he "again did not receive a meal because [,] according to an unknown correctional officer, there was nothing in the kitchen stating Plaintiff was to receive vegetarian meals." [13] Plaintiff unsuccessfully "tried explaining his situation regarding him not receiving his and having his name removed from the vegetarian diet list to an unknown supervising officer making rounds." [14]

As a result, Plaintiff submitted a Health Services Request Form to the medical department on August 20, 2005. [15] In this Health Services Request Form, Plaintiff indicated that the "wrong meal" was being sent to him. The form was reviewed by the medical department on August 22, 2005. Defendant Cooper noted on the form that, according to the department's records, Plaintiff had already been placed on a vegetarian diet since August 5, 2005. [16] However, according to Plaintiff, even after submitting a grievance on August 20, 2005, regarding the receipt of the wrong meals, he "continued to have problems receiving, and quality of his meals." [17]

**\*3** In early September 2005, Plaintiff submitted a Health Services Request Form complaining of skin irritation on his face and arm. [18] The form did not mention any allergy, or problems with his vegetarian/special diet. After receiving the form, the medical department saw Plaintiff and gave him ointment for an acne breakout.

On October 13, 2005, Plaintiff submitted another Health Services Request Form regarding a problem with urinating. [19] The form made no mention of any allergy, or problems with his vegetarian/special diet. On October 14, 2005, Plaintiff was seen for this complaint.

According to Plaintiff, "[o]n October 20, 2005, [he] received a 'supposed' vegetarian meal" that was actually "badly burnt eggs and pears." [20]

In addition, attached as an exhibit to his unsworn opposition memorandum of law, Plaintiff has provided the Court with a calendar, in which he has circled 72 days between June 29, 2005, and October 20, 2005, on which he asserts he either (1) "miss[ed]" a meal, or (2) received his meal late. [21] The Court notes that, apart from not being attached to an affidavit, the calendar fails to specify

which days Plaintiff missed a meal, and which days he simply received his meal late. In addition, the calendar fails to specify whether he missed the meal because (1) he was not given a meal at all, or (2) he was not given the (presumably vegetarian) meal he requested. Finally, the calendar indicates that Plaintiff did not receive a timely meal at ACCF on June 29, 2005 (though incarcerated there at the time), which appears inaccurate because he was not incarcerated at ACCF until June 30, 2005.

In any event, in their memorandum of law in support of their motion for summary judgment, Defendants concede that Plaintiff did not receive a vegetarian meal on a few occasions.[22] Furthermore, in their reply papers, Defendants attempt to quantify the extent of this deprivation by indicating that Plaintiff did not receive the proper meal "a half dozen or so times."[23]

As a result of the foregoing treatment, Plaintiff alleges that he lost thirty (30) pounds between June 28, 2005, and October 2005.[24] Plaintiff also alleges that he suffered from migraine headaches, and dizziness because of his hunger.[25]

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review on Objection from Report–Recommendation

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1) (C).[26] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion, 175 F.3d 1007 (2d Cir.1999).*[27] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Standard Governing Motion to Dismiss for Failure to State a Claim

**\*4** After the pleadings are closed, a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b) (6) is properly brought as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *Maggette v. Dalsheim,* 709 F.2d 800, 801 (2d Cir.1983) [citations omitted]; *see also* Fed.R.Civ.P. 12(b), 12(c). However, the motion for judgment on the pleadings is then decided according to the same standard as is a motion to dismiss for failure to state a claim. *Id.*

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211 nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212 n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212 n. 18 [citations omitted].[28]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212 n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212 n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213 n. 22 [citations omitted].

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[29]

**\*5** As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[30] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965 n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough

fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[31]

Finally, in reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[32] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[33] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[34] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214 n. 28 [citations omitted].

### C. Standard Governing Motion for Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

**\*6** A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson,* 477 U.S. at 248. As a result,

"[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]; *see also* Fed.R.Civ.P. 56(e)(2). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute—even if that nonmoving party is proceeding *pro se.* [35] (This is because the Court extends special solicitude to the *pro se* litigant, in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment. [36] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules. [37] For this reason, this Court has often enforced Local Rule 7.1(a) (3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement [38]— even where the nonmoving party was proceeding *pro se* in a civil rights case. [39]

## III. ANALYSIS

### A. Plaintiff's First Amendment Claim

Plaintiff claims that Defendants violated his rights under the Free Exercise Clause of the First Amendment by denying him food consistent with his Rastafarian faith. The First Amendment guarantees the right to free exercise of religion. U.S. Const. amend. I; *Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citation omitted). This protection extends "into ... aspects of prison life including, pertinently, that of an inmate's diet ...." *Ward v. Goord,* 06–CV–1429, 2009 WL 102928, at *9 (N.D.N.Y. Jan.13, 2009) (Hurd, J.) (citation omitted). "The Second Circuit has held that it is clearly established that a prisoner has a right to a diet consistent with his or her religious scruples." *Ward,* 2009 WL 102928, at *9 (citation omitted). Therefore, "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *Johnson v. Guiffere,* 04–CV–0057, 2007 WL 3046703, at *4 (N.D.N.Y. Oct.17, 2007) (Hurd, J.) (internal quotation marks and citation omitted). "A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of prison officials to further legitimate penological interests on the other hand." *Guiffere,* 2007 WL 3046703, at *4 (citation omitted).

**\*7** "Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework." *Id.* at 5 (citation omitted). "A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs." *Id.* (citations omitted). "Importantly, in evaluating this factor the court must be wary of questioning the centrality of particular beliefs or practices to a faith, or a validity of particular litigants' interpretations of those creeds, and instead may only consider whether the particular plaintiff holds a belief which is religious in nature." *Id.* (internal quotation marks and citations omitted). Stated another way, "[t]he freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs." *Patrick v. LeFevre,* 745 F.2d 153, 157 (2d Cir.1984). Rather, a subjective test must be employed to determine whether the disputed conduct infringes on the plaintiff's sincerely held religious beliefs. *See Ford v. McGinnis,* 352 F.3d 582, 589–90 (2d Cir.2003).

"Once a plaintiff has made this showing, the burden then shifts to the defendant to identify a legitimate penological purpose justifying the decision under scrutiny." *Guiffere,* 2007 WL 3046703, at *5 (citations omitted). "In the event such a penological interest is articulated, its reasonableness is then subject to analysis under the test set out by the Supreme Court in *Turner v. Safley,* 482 U.S.

78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)." *Id.* (citations omitted).

"Under *Turner,* the court must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and whether the regulations are rationally related to that objective." *Id.* (internal quotation marks and citation omitted). The court then asks whether the inmate is afforded adequate alternative means for exercising the right in question." *Id.* (citation omitted). "Lastly, the court must examine the impact that accommodation of the asserted constitutional right will have on others guards and inmates in the prison." *Id.* (internal quotation marks and citation omitted). "Decisions rendered since *Turner* have clarified that[,] when applying this test, a court should examine 'the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests.' " *Id.* (citations omitted).

With all of this in mind, it is important to note that "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored." *Tafari v. Annets,* 06–CV–11360, 2008 WL 2413995, at \*16 (S.D.N.Y. June 12, 2008) (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 203 n. 6 [2d Cir.2004] ). "In this respect, this area of the law is no different from many others in which the time-honored maxim *de minimis non curat lex* applies." *McEachin,* 357 F.3d at 203 n. 6.

**\*8** Here, as an initial matter, Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, that the disputed conduct infringed on his sincerely held religious beliefs. In particular, Plaintiff has not alleged or established how the meals that he received were actually "wrong." For example, Plaintiff has not alleged or established that the meals were "wrong" because they were not in conformity with his Rastafarian faith, or because they contained a product to which he is allergic. Nor has Plaintiff alleged or established how receiving non-vegetarian meals infringed on his sincerely held religious beliefs. *See Benjamin v. Coughlin,* 905 F.2d 571, 580 (2d Cir.1990) (dismissing Rastafarians' "dietary claim" asserting they had constitutional right to observe "Ital," because plaintiffs "failed to clearly define the claim or to make the evidentiary showing required to establish any constitutional dietary claim").

In any event, Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, that the "wrong meals" he (allegedly) received constituted a burden that was anything more than *de minimis* in nature. As explained above in Part I.B. of this Decision and Order, Plaintiff has not established (or even alleged) the number of "wrong meals" that he (allegedly) received.[40] As also explained above in Part I.B., in their motion for summary judgment, Defendants concede that Plaintiff was denied vegetarian food during "a few of his meals." Furthermore, in an effort to quantify the extent of this deprivation, Defendants estimate that Plaintiff received the "wrong meal" about "a half dozen or so times."

For the sake of argument, the Court will assume that the number of "wrong meals" was *three times* the number of "wrong meals" conceded by Defendants, which would be the equivalent of one "wrong meal" per week for each of the 18 weeks that Plaintiff was incarcerated at ACCF. What is as significant as the number of "wrong meals" is the time period over which they occurred. Here, such "wrong meals" were not delivered to Plaintiff consecutively. Rather, Plaintiff asserts they were delivered over the course of Plaintiff's incarceration at ACCF, from June 30, 2005, until October 25, 2005—a time period of approximately 118 days. Given that Plaintiff was supposed to receive three meals per day, Plaintiff was supposed to receive approximately 354 meals while at ACCF. Assuming that Plaintiff received the "wrong meal" approximately 18 out of 354 times, the Court finds that a rational juror could not conclude that the resulting burden on Plaintiff's religious beliefs was anything more than *de minimis.*

In the analogous case of *Odom v. Dixion,* the Western District of New York held that the New York State Department of Correctional Services' failure to provide a prisoner with Kosher meals on seven out of 33 occasions (i.e., over an eleven-day period) did not "support a § 1983 violation under either the First Amendment or RLUIPA." *Odom v. Dixion,* 04–CV–0889, 2008 WL 466255, at \*11 (W.D.N.Y. Feb.15, 2008) (noting that deprivation was due to "an administrative error based on [the prisoner's] failure to timely advise [the facility's] food service personnel of his brief confinement on keeplock status"). Other courts have issued similar rulings. *See, e.g., Norwood v. Strada,* 249 F. App'x. 269, 272 & n. 1 (3d Cir.2007) (denial of religiously certified "halal" meals

on seven out of seven occasions, during prison's two-and-onehalf-day emergency lock-down, was "a mere *de minimis* intrusion" that failed to substantially burden the inmate's religious beliefs); *Rapier v. Harris,* 172 F.3d 999, 1006 n. 4 (7th Cir.1999) (affirming summary judgment for defendants because denial of pork-free meal on three occasions out of 810 meals constituted *de minim is* burden, where the denials were caused by "institutional shortage," and plaintiff "has not alleged a routine or blanket practice of denying him pork-free meals."); *Thomas v. Picio,* 04–CV–3174, 2008 WL 820740, at *6 & n. 8 (S.D.N.Y. Mar.26, 2008) (assuming that inmate plaintiff was denied three or four Kosher meals for one or two consecutive days, "such a denial is not a substantial burden" on her free exercise of religion); *Omar v. Casterline,* 414 F.Supp.2d 582, 593 (W.D.La.2006) ("[T]he refusal to hold three meals [until sunset] because of Ramadan states only a *de minimis* imposition on ... free exercise rights.") .[41]

**\*9** For each of these alternative reasons, Plaintiff's First Amendment claim is dismissed.

### B. Plaintiff's Eighth Amendment Claim

Plaintiff claims that Defendants violated his Eighth Amendment rights in two separate ways. First, he claims that, by denying him food consistent with his vegetarian diet, which was approved by the medical department at ACCF, he was denied the right to adequate prison conditions. Second, he claims that, by knowingly being allowed to lose significant weight, he was denied the right to adequate medical care. The relevant legal standard governing both claims is the same.

"The Eighth Amendment prohibits 'cruel and unusual punishments' in the course of incarceration." *Labounty v. Gomez,* 94–CV–3360, 1998 WL 214774, at *2 (S.D.N.Y. May 1, 1998). "To bring a cause of action pursuant to Section 1983 of Title 42, United States Code, for a violation of the Eighth Amendment's prohibition, a plaintiff must establish that the deprivation of which he is complaining is 'sufficiently serious' to constitute cruel and unusual punishment and that a defendant's actions in allowing the deprivation must have amounted to deliberate indifference." *Labounty,* 1998 WL 214774, at *2 (citing *Farmer v. Brennan,* 511 U.S. 825, 114 [1994, 114 S.Ct. 1970, —— ——, 128 L.Ed.2d 811, —— ——] ). "Thus, there is an objective and subjective component to

the test." *Id.* (citing *Rivera v. Senkowski,* 62 F.3d 80, 84 [2d Cir.1995] ).

"The denial of a medically proscribed diet may constitute an Eighth Amendment violation under certain circumstances." *Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) (citing *Robles v. Coughlin,* 725 F.2d 12, 15–16 [2d Cir.1983] ) (other citations omitted). Likewise, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles,* 725 F.2d at 15–16 [citations omitted]; *see also Chapdelaine v. Keller,* 95–CV–1126, 1998 WL 357350, at *12 (N.D.N.Y. Apr.16, 1998) (Sharpe, M.J.) ("[T]he Eighth Amendment requires that prisoners receive nutritionally adequate food prepared and served in conditions that do not present an immediate danger to the health of the inmates who consume it"). However, "[m]ere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation." *Abdush–Shahid,* 933 F.Supp. at 180.

To establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes an Eighth Amendment violation, one must establish that there was a "sufficiently serious condition" that resulted from the food not being received. *See, e.g., Labounty,* 1998 WL 214774, at *2. A condition is serious for constitutional purposes if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks and citations omitted).[42]

If Plaintiff is able to establish a "sufficiently serious condition," he must also establish "that corrections personnel intentionally denied, delayed access to, or interfered with the [receipt of food]." *Abdush–Shahid,* 933 F.Supp. at 180; *see also Portuondo,* 151 F.Supp.2d at 213. Stated another way, deliberate indifference requires more than "negligent oversight." *Bockelmann,* 2007 WL 527320, at *10. In addition, a showing of deliberate indifference requires more than just "vague and conclusory allegations." *Labounty,* 1998 WL 214774, at *2. Finally, it is worth noting that a plaintiff has "a duty to inform [facility] staff that he was not receiving his medically prescribed diet," and if he "fail[s] to do so[,] ... [d]eliberate indifference does not exist." *Labounty,* 1998 WL 214774, at *2.

#### 1. Whether Plaintiff's Weight Loss Constitutes a Serious Medical Need

**\*10** As an initial matter, Plaintiff's claim that he is allergic to meat and eggs is problematic because the admissible record evidence before the Court fails to establish a diagnosis by any medical professional that Plaintiff suffers from allergies to meat or eggs. *See Bockelmann,* 2007 WL 527320, at \*8 (noting, as an initial problem to Plaintiff's claim that his medical condition constitutes a serious medical need, that "the record before the court fails to disclose a diagnosis by any medical professional that [Plaintiff] suffers from a medical condition requiring the high calorie diet which he so persistently sought"). The only proof that Plaintiff has offered that supports his claim that he is allergic to meat and eggs is his statement to medical staff, as well as the letters he wrote to Defendant Rockwell, indicating that he is allergic to meat and eggs. (Dkt. No. 54, Part 7, at 26, 28, 30, 32.) Apart from the conclusory and self-serving nature of this "evidence," it should be noted that (1) Plaintiff failed to inform Defendants of this alleged allergy for roughly a week, despite having multiple opportunities to do so, and (2) he affirmatively indicated during his screening on June 30, 2005, that he did not suffer from any allergies.

However, even assuming that Plaintiff is indeed allergic to meat and eggs, and was entitled to a vegetarian diet for that reason, the only harm that he has alleged as a result of being deprived vegetarian meals on an unspecified number of occasions is that he lost thirty (30) pounds over a four-month period, and that this weight loss contributed to him suffering migraine headaches and dizziness. There are three problems with this alleged harm.

First, although Plaintiff claims that Downstate Correctional Facility has a record of his weight, which supports his weight loss claim, Plaintiff has failed to adduce admissible record evidence establishing this loss of thirty pounds. Second, the record reflects that, at no point in any of the complaints that Plaintiff filed between July and October 2005, or during any of his visits with medical staff, did Plaintiff indicate that he had lost any weight or was experiencing headaches or dizziness. Finally, Plaintiff does not adduce admissible record evidence establishing (or even allege facts plausibly suggesting) that he has been unable to gain weight since leaving ACCF, or that the headaches and dizziness have persisted since October 2005.

As a result, even assuming that Plaintiff lost thirty pounds and experienced dizziness and headaches over a four-month period (from June 30, 2005 to October 25, 2005), as the District Judge Gary L. Sharpe of this Court concluded *Bost v. Bockelmann,* the undersigned concludes that "there is no evidence in the record from which a reasonable factfinder could conclude that plaintiff's ... weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation." *Bockelmann,* 2007 WL 527320, at \*8.

#### 2. Whether Defendants Were Deliberately Indifferent to any of Plaintiff's Serious Medical Needs

**\*11** Even if the Court were to find a question of fact as to whether Plaintiff's weight loss constituted a sufficiently serious condition, the Court could not find any admissible record evidence establishing that Defendants were deliberately indifferent to this condition. When viewing the record in the light most favorable to Plaintiff, the Court finds that, during his incarceration at ACCF, Plaintiff (1) wrote four letters to Defendant Rockwell at ISU, (2) complained twice to unidentified corrections officers about his food, and (3) notified the medical staff that he was receiving the "wrong meals" one time in a Health Services Request Form. *See* Part I.B. of this Decision and Order.

Based on these undisputed facts, the Court finds that there is at least a question of fact as to whether there were certain days on which Plaintiff did not receive vegetarian meals. However, the Court also finds that "[t]here is no evidence in the record ... to suggest that this deprivation was deliberate and calculated to deprive the plaintiff of the nourishment constitutionally required and necessary to avoid ... weight loss, as distinct from the result of negligent oversight[,] which does not rise to a level of deliberate indifference." *Bockelmann,* 2007 WL 527320, at \*10. "Simply stated, the evidence is lacking that any of the constituent groups sued in this action, including the county defendants, prison medical personnel, and the food service providers at [ACCF], were both cognizant of a serious medical need on the part of the plaintiff and aware that their failure to be faithful in providing the prescribed ... diet would result in a substantial risk of serious harm." *Bockelmann,* 2007 WL 527320, at \*10.

In support of this finding, the Court makes four points. First, of the four letters that Plaintiff wrote to ISU, two

focused almost exclusively on the quality of the food he received, [43] and another was the first letter that he sent to ISU, notifying them that he was a vegetarian. (Dkt. No. 54, Part 7, at 26, 28, 33.) The remaining letter, written on July 29, 2005, explained that Plaintiff was a vegetarian and implied that Plaintiff had problems receiving vegetarian meals. (Dkt. No. 54, Part 7, at 30.) However, neither this letter, nor any of the other letters, in any way stated that Plaintiff was losing weight, or suffering from other side-effects as a result of receiving the "wrong meal." (Dkt. No. 54, Part 7, at 26, 28, 30, 32, 33, 35, 38, 40, 42.)

Second, the Court notes that Plaintiff indicated on August 20, 2005, in a Health Services Request Form, that "everyday they send up the wrong meal." The record reflects that, after filling out this form, Plaintiff filled out Health Services Request Forms on two separate occasions (once in early September 2005 and once on October 13, 2005). On neither occasion did Plaintiff mention that he was still receiving the "wrong meal." The Court finds this fact material because, if Plaintiff was having a problem with his meals, based on the fact that he had previously notified the medical department in a Health Services Request Form of his problem, it would be reasonable to expect that he would have again voiced this problem to the medical department.

 *12  Third, the record reflects that, in all of the visits that Plaintiff had from the medical department throughout his four-month stay at ACCF, never once did he speak of weight loss, or mention other side-effects that he was suffering as a result of receiving the "wrong meal."

Finally, the record reflects that Defendant Rockwell took action to make the kitchen staff and medical staff aware of Plaintiff's issues; the medical staff also took action to so notify the kitchen staff; and the kitchen staff did not intentionally deprive Plaintiff of his vegetarian diet. [44]

Simply stated, whatever harm Plaintiff suffered cannot be attributed to anything more than negligence, which, again, is not actionable under the Eighth Amendment.

For all of these reasons, Plaintiff's Eighth Amendment claims are dismissed.

### C. Plaintiff's Fourteenth Amendment Claim

Magistrate Judge Peebles recommended that the Court dismiss Plaintiff's Fourteenth Amendment claim that Defendants' refusal to adhere to the Court Order that he receive a special vegetarian diet associated with his religious practices violated Plaintiff's right to equal protection under the law. Neither party has objected to this recommendation. As a result, the Court reviews the recommendation for clear error, and finds no such error. Accordingly, for the reasons set forth in Magistrate Judge Peebles's Report–Recommendation, Plaintiff's Fourteenth Amendment claim is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles's Report–Recommendation (Dkt. No. 66) is ***ADOPTED* in part,** as described above; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt.Nos.53, 54) is ***GRANTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 27) is ***DISMISSED*** in its entirety. The clerk is directed to enter judgment and close this case.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 1401645

### Footnotes

| | |
|---|---|
| 1 | (Dkt. No. 54, Part 8, at 5.) |
| 2 | (*Id.* at 12–13.) |
| 3 | (Dkt. No. 54, Part 7, at 26.) |
| 4 | (Dkt. No 54, Part 2, at 3–4.) |
| 5 | (*Id.*) |
| 6 | (Dkt. No. 54, Part 8, at 14.) |
| 7 | (*Id.* at 15.) |
| 8 | (*Id.* [noting that a slip was sent].) |

**9**  (Dkt. No. 54, Part 7, at 28.)

**10**  (*Id.* at 30.)

**11**  (*Id.* at 31.) The Court notes that Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, the particular dietary requirements of his Rastafarian religion.

**12**  (Dkt. No. 54, Part 8, at 10.)

**13**  (Dkt. No. 27, ¶ 24 [Plf.'s Second Am. Compl.].)

**14**  (*Id.* at ¶ 25.)

**15**  (Dkt. No. 54, Part 8, at 16.)

**16**  (*Id.*)

**17**  (Dkt. No. 27, ¶ 27 [Plf.'s Second Am. Compl.].) The Court notes that, in Plaintiff's last letter to Defendant Rockwell dated September 19, 2005, Plaintiff explained that he had to wait "over 30 minutes or more" for a "court sandwich that was so old bread hard and falling apart." (Dkt. No. 54, Part 7, at 33.) In the same letter, Plaintiff explained that on another occasion, he "had to wait over 40 minutes [to receive his meal] then they sent over a dirty tray. I don't no [sic] who the hell they think they are dealing with that way." (*Id.*)

**18**  (Dkt. No. 54, Part 8, at 17.)

**19**  (*Id.* at 18.)

**20**  (Dkt. No. 27, ¶ 28 [Plf.'s Second Am. Compl.].)

**21**  (Dkt. No. 57, Part 2, at 7, 30.)

**22**  (Dkt. No. 54, Part 4, at 3.)

**23**  (Dkt. No. 59, at 2.) The Court notes that, in their Objections, Defendants offer (for the first time) evidence in support of this estimate, although the Court declines to consider this late-blossoming record evidence, pursuant to the legal standard described below in note 26 of this Decision and Order. (*See, e.g.,* Dkt. No. 67, Part 1, ¶ 8 [Roche Affid.]; Dkt. No. 67, Part 5, ¶¶ 8–9 [Clark Affid.]; Dkt. No. 67, Part 8 [Ex. C to Clark Affid.]; Dkt. No. 67, Part 9, ¶ 7, 10, 11, 12 [Weis Affid.].)

**24**  (Dkt. No. 27, ¶ 33 [Plf.'s Second Am. Compl.].) Plaintiff alleges that the departmental medical staff at Downstate Correctional Facility (where Plaintiff was transferred on October 25, 2005) has a record of his weight, which supports his weight loss claim. (*Id.*)

**25**  (*Id.* at ¶ 14.)

**26**  On *de novo* review, "[t]he judge may ... receive further evidence ...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

**27**  *See also Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

**28**  *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ( "[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

**29**  *See also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ).

**30**  *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215–16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible claim*

of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

31  For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199–2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01–CV–0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02–CV–1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01–CV–6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

32  *Sealed Plaintif v. Sealed Defendant # 1,* No. 06–1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

33  *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

34  *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord, Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983); *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

35  *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) [citations omitted]; *accord, Lee v. Alfonso,* No. 04–1921, 2004 U.S.App. LEXIS 21432, 2004 WL 2309715 (2d Cir. Oct. 14, 2004), *aff'g,* 97–CV–1741, 2004 U.S. Dist. LEXIS 20746, at *12–13 (N.D .N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04–CV–1144, 2006 U.S. Dist. LEXIS 9147, at *1–4, 2006 WL 395269 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371–372 (N.D.N.Y.2003) (Hurd, J.).

36  *Krug v. County of Rennselaer,* 04–CV–0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept.18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant is not disadvantaged by the lack of legal training. In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed].); *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted].

37  *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins,* 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant].");

2009 WL 1401645

*Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) ("*[P]ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) ("Although *pro se* litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.,* 69 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ( "[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se* ] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

38   Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).

39   *See, e.g., Hassig v. N.Y.S. Dep't of Envtl. Conservation,* 01–CV–0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd,* No. 04–1773, 2005 WL 290210 (2d Cir. Feb.2, 2005); *Lee,* 2004 U.S. Dist. LEXIS 20746, at *12–13, 15, *aff'd,* No. 04–1921, 2004 U.S.App. LEXIS 21432; *Harvey v. Morabito,* 99–CV–1913, 2003 WL 21402561, at *1, 3–4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99–CV–1913, Order, at 2–3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd,* No. 04–1008, 115 F. App'x 521 (2d Cir. Dec.23, 2004); *Krug,* 2006 WL 2669122, at *2–3; *Fox,* 2006 U.S. Dist. LEXIS 9147, at *2–3, 2006 WL 395269; *Singleton v. Caron,* 03–CV–0455, 2005 WL 2179402, at *3–4 (N.D.N.Y. Sept.5, 2005) (Peebles, M.J.), *adopted by* 03–CV–0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan,* 289 F.Supp.2d at 295; *Butler v. Weissman,* 00–CV–1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00–CV–1240, Decision and Order, at 1–2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car–Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (McAvoy, C.J.); *Costello v. Norton,* 96–CV–1634, 1998 WL 743710, at *1 n. 2 (N.D.N.Y. Oct.21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.,* 96–CV1812, 1998 WL 566773, at *1 n. 2 (N.D.N.Y. Aug.21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a] [3] "to carry out the conduct of its business").

40   As explained above in Part I.B. of this Decision and Order, the closest Plaintiff comes to doing so is when he provides the Court with a calendar, in which he has circled 72 days between June 29, 2005, and October 20, 2005, on which he asserts he either (1) "miss[ed]" a meal, or (2) received his meal late.

41   *Cf. Tafari,* 2008 WL 2413995, at *16 (denial of Kosher meals on a few separate occasions "did not substantially burden [Plaintiff's] religious beliefs and constituted, at most, a *de minimis* violation."); *Ward,* 2009 WL 102928, at *9 ("The failure to provide a single meal is insufficient to allege a constitutional violation."); *Peterson v. Price,* 06–CV–0106, 2007 WL 2893009, at *6 (N.D.W.Va. Sept.28, 2007) ("[T]he failure to provide inmates with one or two kosher meals does not rise to the level of a constitutional claim.").

42   *See also Bost v. Bockelmann,* 04–CV–0246, 2007 WL 527320, at *8 (N.D.N.Y. Feb.20, 2007) (Sharpe, J.) (concluding that, although Plaintiff allegedly lost fifteen pounds in two days, "there is no evidence in the record from which a reasonable factfinder could conclude that plaintiff's food intake and weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation"); *cf. Beckford v. Portuondo,* 151 F.Supp.2d 204, 213 (N.D.N.Y.2001) (Kahn, J.) (material issue of fact existed with regard to inmate's Eighth Amendment claim because evidence showed that inmate was deprived of two out of three meals per day for eight days); *Moss v. Ward,* 450 F.Supp. 591, 594, 597 (W.D.N.Y.1978) (material issue of fact existed with regard to inmate's Eighth Amendment claim because evidence showed that inmate was completely deprived of food for four consecutive days, and was given only one meal a day for next three days).

43   "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *Bockelmann,* 2007 WL 527320, at *10 (citing *LeMaire v. Maass,* 12 F.3d 1444, 1456 [9th Cir.1993] [other citation omitted] ).

44   In his memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiff argues that "a screw up or simple negligence or inadvertent failure to provide food or care as requested automatically [gives rise] to a deprivation of constitutional privilege." However, the law is clear that simple negligence does not rise to the level of deliberate indifference. *See Bockelmann,* 2007 WL 527320, at *10. Rather, deliberate indifference is a state of mind akin to criminal

2009 WL 1401645

recklessness. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003); *Hathaway v. Coughlin* ("Hathaway II"), 99 F.3d 550, 553 (2d Cir.1996).

---

**End of Document**                     © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6055019
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

James HANKERSON, Plaintiff,
v.
NASSAU COUNTY CORRECTIONAL
FACILITY, Defendant.

No. 12–CV–5282(SJF)(WDW).
|
Dec. 4, 2012.

**Attorneys and Law Firms**

James Hankerson, East Meadow, NY, pro se.

### ORDER

FEUERSTEIN, District Judge.

**I. Introduction**
 **\*1**  On October 16, 2012, incarcerated *pro se* plaintiff
James Hankerson ("plaintiff") filed a complaint pursuant
to 42 U.S.C. § 1983 ("section 1983"). [Docket Entry
No. 1] ("Compl."). Accompanying the complaint is an
application to proceed *in forma pauperis.* Upon review
of plaintiff's declaration in support of his application
to proceed *in forma pauperis,* the Court finds that his
financial position qualifies him to commence this action
without prepayment of the filing fee. *See* 28 U.S.C. §
1915(a)(1). However, for the reasons discussed herein,
plaintiff's complaint is *sua sponte* dismissed without
prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii),
1915A(b)(1).

**II. The Complaint**
Plaintiff's brief, handwritten complaint, submitted on the
Court's section 1983 complaint form, alleges that, on
September 10, 2012, he was served "spoiled chicken salad"
for lunch while he was incarcerated at the Nassau County
Correctional Center. Compl. at ¶ IV.[1]  Plaintiff claims
that he alerted an officer who agreed that the food was
spoiled and returned the food cart to the kitchen. *Id.*
Plaintiff claims that he was not served anything else until
dinner. *Id.* Although plaintiff left blank the section of
the complaint form that calls for a description of claimed

injuries, he seeks to recover $250,000 for the violation "of
[his] civil right & emotional distress." *Id.* at ¶¶ IV.A., V.

**III. Discussion**

 **A.** *In Forma Pauperis* Application
Upon review of plaintiff's declaration in support of his
application to proceed *in forma pauperis,* the Court finds
that plaintiff's financial status qualifies him to commence
this action without prepayment of the filing fees. *See* 28
U.S.C. § 1915(a)(1). Therefore, plaintiff's application to
proceed *in forma pauperis* is granted.

 **B. The Prison Litigation Reform Act**
The Prison Litigation Reform Act requires a district
court to dismiss an *in forma pauperis* complaint if the
action is frivolous or malicious; fails to state a claim on
which relief may be granted; or seeks monetary relief
against a defendant who is immune from such relief.
28 U.S.C. §§ 1915(e)(2)(B) (i-iii), 1915A(a)-(b); *Abbas v.
Dixon,* 480 F.3d 636, 639 (2d Cir.2007). The Court is
required to dismiss the action as soon as it makes such a
determination. 28 U.S.C. § 1915A(a).

It is axiomatic that the Court is required to read a *pro
se* plaintiff's complaint liberally, *see Erickson v. Pardus,*
551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007),
and to construe it " 'to raise the strongest arguments'
" suggested. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d
Cir.2010) (quoting *Harris v. City of N.Y.,* 607 F.3d 18,
24 (2d Cir.2010)). Moreover, the Court must assume
the truth of "all well-pleaded, nonconclusory factual
allegations" in the complaint. *Kiobel v. Royal Dutch
Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010).

A complaint must plead sufficient facts "to state a claim
to relief that is plausible on its face." *Bell Atl. Corp.
v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167
L.Ed.2d 929 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556
U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
While "detailed factual allegations" are not required,
"[a] pleading that offers 'labels and conclusions' or 'a
formulaic recitation of the elements of a cause of action
will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

C. Section 1983 Standard

**\*2** Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

To state a cognizable section 1983 claim, a plaintiff must allege that the challenged conduct was "committed by a person acting under color of state law" and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.2010) (internal quotation marks omitted). Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999).

In addition, in order to state a claim for relief under section 1983, the plaintiff must allege the personal involvement of a defendant in the purported constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir.2010). Personal involvement may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir.2003). "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority'...." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996)). A complaint based upon a violation under section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199 (2d Cir.2010) (summary order).

D. Entities Immune From Suit

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also, e.g., Lukes v. Nassau Cnty. Jail*, No. 12–CV–1139(SJF)(AKT), 2012 WL 1965663, at \*2 (E.D.N.Y. May 29, 2012) (dismissing claims against the Nassau County Jail because it is an "administrative arm of the Nassau County, without a legal identity separate and apart from the County"); *Melendez v. Nassau Cnty.*, No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at \*5 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department because it lacks the capacity to be sued). Accordingly, plaintiff's claims against the Nassau County Correctional Facility are dismissed with prejudice. However, given plaintiff's *pro se* status, the Court will construe his claims to be asserted against Nassau County.

E. Claims Against Nassau County

**\*3** It is well-established that a municipality or municipal entity, such as Nassau County, cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prevail on a section 1983 claim against a municipality, a plaintiff must "prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir.2011), *cert. denied,* ––– U.S. ––––, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012) (internal quotation marks omitted). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Id.* at 334. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Municipal liability may also lie where "a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice." *Cash,* 654 F.3d at 334 (internal quotation marks omitted).

Even liberally construing the complaint, plaintiff's allegations are insufficient to state a section 1983 cause of action against Nassau County. *See, e.g., White v.*

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*St. Joseph's Hosp.,* 369 F. App'x 225, 226 (2d Cir.2010) (affirming *sua sponte* dismissal of section 1983 claim for the plaintiff's failure "to allege that any of the allegedly unconstitutional actions were taken pursuant to an official policy or custom, as is required to state a § 1983 claim against a municipality."). Plaintiff fails to allege: (1) the existence of a formal policy which caused the alleged injury; (2) actions taken or decisions made by policymaking officials which caused the alleged injury; (3) a practice so persistent and widespread as to practically have the force of law which caused the alleged injury; or (4) deliberate indifference on behalf of policymakers to the rights of those who come in contact with their employees. Accordingly, plaintiff's claims, as construed to be against Nassau County, are dismissed.

IV. Leave to Amend

Although "[t]he court should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Ruotolo v. Cit y of N.Y.,* 514 F.3d 184, 191 (2d Cir.2008). Any amendment to plaintiff's complaint would be futile because, *inter alia,* his allegation that he was denied a single meal while incarcerated at the Nassau County Correctional Center does not give rise to a constitutional deprivation.

**\*4** The "Eighth Amendment prohibition against cruel and unusual punishment [ ] require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (internal quotation marks omitted).

Even affording the *pro se* complaint a liberal construction, plaintiff has alleged only that he was deprived of a single meal and that he suffered no injury as a result. Although a "substantial deprivation of food" may implicate a prisoner's Constitutional rights, the denial of food to an inmate on one occasion is not a *per se* violation of the Constitution. *Robles,* 725 F.2d at 15–16. Plaintiff's allegation that he missed a single meal falls far short of a "substantial deprivation of food" and does not rise to the level of a constitutional violation. Since plaintiff cannot establish that he was "deprived ... of rights, privileges, or immunities secured by the Constitution or laws of the United States," *Corneio v. Bell,* 592 F.3d 121, 127 (2d Cir.2010), he cannot state a claim under section 1983 as a matter of law.

Accordingly, any amendment to the complaint would be futile and the complaint is therefore dismissed in its entirety without leave to amend. Plaintiff may pursue any valid claims he may have in state court. The Clerk of the Court is respectfully directed to close this case.

IV. Conclusion

For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is granted and his complaint is *sua sponte* dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). The Clerk of the Court is directed to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6055019

Footnotes

1    The Court notes that plaintiff's complaint is nearly identical to a complaint brought by another inmate, Raymond Hyman, and assigned docket number 12–CV–5099 (SJF)(AKT).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1409529
Only the Westlaw citation is currently available.
United States District Court, N.D. Florida,
Gainesville Division.

Tabarus Anthony JOHNSON, Plaintiff,
v.
Bobby MERRIMAN, et al., Defendants.

No. 1:13–cv–00087–MP–GRJ.
|
Signed March 26, 2015.

**Attorneys and Law Firms**

Tabarus Anthony Johnson, Mayo, FL, pro se.

Marcus Owen Graper, Shirley Wilson Durham, Matthew F. Vitale, Office of the Attorney General, Tallahassee, FL, for Defendants.

## *ORDER*

MAURICE M. PAUL, Senior District Judge.

**\*1** This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation dated November 18, 2014. (Doc. 66). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Plaintiff has filed objections at Doc. 67. I have made a de novo review based on those objections.

Having considered the Report and Recommendation, and the timely filed objections, I have determined that the Report and Recommendation should be adopted. Additionally, while the Report and Recommendation was pending before the Court, Plaintiff filed a letter (doc. 69), in which he requests a continuance of this matter until Plaintiff goes home on May 10, 2015. Plaintiff raises no new arguments as to why he is entitled to a continuance. Because the Court now adopts the Report and Recommendation and grants Defendants' motion for summary judgment, the letter, construed as a motion to continue, must be denied as moot.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Magistrate Judge's Report and Recommendation (doc. 66) is adopted and incorporated by reference in this order.

2. Defendants' motion for summary judgment (doc. 53) is GRANTED.

3. Plaintiff's motion for summary judgment (doc. 57) is DENIED.

4. Plaintiff's letter (doc. 69), construed as a motion to continue, is DENIED as moot.

5. The Clerk is directed to enter judgment in favor of Defendants and to close the file.

**DONE AND ORDERED.**

## *REPORT AND RECOMMENDATION*

GARY R. JONES, United States Magistrate Judge.

This case is before the Court on Doc. 53, Defendants' Motion for Summary Judgment. The Plaintiff has also filed a motion for summary judgment, which, upon review, the Court construes as a response in opposition to the Defendants' Motion for Summary Judgment, Doc. 57. For the reasons discussed below, Defendants' Motion for Summary Judgment is due to be granted.

### I. Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). As the Supreme Court held in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.    1

burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir.1987).* The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785–86 (11th Cir.2005).*

## II. Plaintiff's Allegations

**\*2** On December 9, 2011, Plaintiff was taken to disciplinary confinement in P–Dormitory. (Doc. 4–1 at 5.) He asked Correctional Officer Merriman if he would eat, to which Merriman replied "as long as [I'm] the dorm officer [you] will never eat." *Id.* Sergeant Dickerson also told Plaintiff later that day that as long as he was the dorm supervisor, Plaintiff would not eat. *Id.* Plaintiff claims that he did not eat lunch or dinner that day, and his dinner tray was brought to him but thrown on the floor. (Doc. 4–1 at 5, Doc. 55–1 at 8.) Plaintiff states that the next day, December 10, 2011, he was denied "all two meals." (Doc. 4–1 at 5.) Plaintiff avers that the day after, December 11, 2011, he was told by Correctional Officer "Grim" [1] [sic] that he was not to be fed per the Captain. *Id.*

In sum, Plaintiff alleges that he was not fed from dinner on December 9, 2011 until after December 11, 2011. Plaintiff claims that he lost 30 pounds due to this deprivation. (Doc. 55–1 at 17.) He seeks damages in the form of declaratory, injunctive, and monetary relief. (Doc. 4–1 at 7.)

## III. Defendants' Summary Judgment Evidence

In support of their motion for summary judgment, Defendants each present a sworn affidavit. (Docs.54–5, 54–6, 54–7.). During the period of December 9–11, Defendants Merriman and Grand worked as Correctional Officers at Suwannee Correctional Institution, and Defendant Dickerson worked as a Correctional Sergeant at Suwannee Correctional Institution. (Docs.54–5, 54–6, 54–7.). Defendant Merriman worked on December 11 from 8:00 a.m. to 4:00 p.m as a housing officer in P–

Dormitory, which is confinement. (Doc. 54–5.) Defendant Dickerson worked on December 9, 2011, from 8:00 a.m. to 4:00 p.m. as the housing sergeant in P–Dormitory but did not work on December 10 or 11. (Doc. 54–6.) Defendant Michael Grand worked from 4:00 p.m. to 12:00 a.m. on December 9–11, 2011 as a housing officer in P–Dormitory. (Doc. 54–7.)

Defendants submitted a Housing Unit Log for P–Dormitory between December 911, 2011. (Doc. 54–9, 54–10, 54–11, 54–12.) The log shows that Defendant Dickerson worked as the housing sergeant for the second shift on December 9, 2011 from 8:00 a.m. to 4:00 p.m. (Doc. 54–9 at 4, Doc. 54–10 at 1.) The food cart for lunch arrived at 10:48 a.m. on December 9. (Doc. 54–9 at 3.) Plaintiff arrived at P–Dormitory at 12:48 p.m. (Doc. 54–10 at 1.) Defendant Dickerson's shift was relieved at 4:00 p.m. (Doc. 5410 at 1.) The food cart for the evening meal arrived at the P–Dormitory at 4:10 p.m. that day. (Doc. 54–10 at 2.) Defendant Grand begun work during the third shift at 4:00 p.m. on December 9 and conducted the secure housing evening meal with several other officers at 4:15 p.m. (Doc. 54–10 at 3.) His shift ended at 12:00 a.m. on December 10. (Doc. 54–11 at 1.)

None of the Defendants worked the first or second shift on December 10, 2011. (Doc. 54–11 at 1–5.) Defendant Grand worked the third shift that day, from 4:00 p.m to 12:00 a.m., and conducted the secure housing evening meal with several other officers. (Doc. 54–11 at 6–7.)

**\*3** On December 11, 2011, Defendant Merriman worked the second shift from 8:00 a.m. to 4:00 p.m. (Doc. 54–12 at 4–5.) He inspected the food cart at 10:55 a.m. (Doc. 54–12 at 4.) Defendant Grand worked the third shift that day, from 4:00 p.m. to 12:00 a.m., and conducted the secure housing evening meal with other officers at 4:30 p.m. (Doc. 54–12 at 5–6.)

Finally, the Defendants submitted a record of Plaintiff's weight during confinement in P–Dormitory between August 10 and 20, 2011, and between December 9 and 31, 2011. (Doc. 54–4 at 1–2, Doc. 63 at 3–6.) Upon entering confinement on August 10, 2011, Plaintiff weighed 168 pounds. (Doc. 54–4 at 1.) He weighed 168 pounds on August 17, 2011, three days before leaving confinement. (Doc. 54–4 at 2.) When entering confinement again on December 9, 2011, Plaintiff weighed 165 pounds. (Doc. 63 at 3.) On December 13, 2011, Plaintiff's weight was

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1409529

recorded as 167 pounds. (Doc. 63 at 4.) His weight was 167 pounds again on December 21, 2011. (Doc. 63 at 5.)

#### IV. Plaintiff's Summary Judgment Evidence

In opposition to Defendant's motion, Plaintiff has not filed any opposing evidence. Instead, Plaintiff contends (without any evidentiary support) that the prison cameras would show that Defendants were working on "those days and times," presumably the period between December 9 and 11, 2011. (Doc. 57 at 1.) He asks the Court to safeguard tapes from an unspecified camera for review so that the recording will not be written over. (Doc. 57 at 1.) He also requests that if the Court cannot procure the tapes, that the Court order the prison to produce the entire work time sheet for the years of 2011 and 2012. (Doc. 57 at 1.)

#### V. Discussion

It is well established that a civil suit under 42 U.S.C. § 1983 requires proof of a causal connection between the actions of the defendant and the constitutional deprivation. *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir.1986.) Here, Plaintiff alleges a constitutional violation in the form of food deprivation from noon of December 9, 2011 to the end of the day on December 11, 2011. [2]

As shown by the evidence provided in support of Defendants' motion for summary judgment, during Plaintiff's claim of alleged food deprivation, none of the three Defendants worked in the P–Dormitory during the service of more than one meal per day.

On December 9, 2011, Plaintiff arrived in P–Dormitory at 12:48 p.m., before dinner was served but after lunch was served. (Doc. 54–10 at 1.) Defendant Dickerson was the housing sergeant when Plaintiff arrived at P–Dormitory, but was relieved before dinner was served. (Doc. 54–10 at 1., Doc. 54–6 at 1.) Thus, Defendant Dickerson was not personally involved in serving the dinner meal to Plaintiff on December 9, 2011.

Defendant Grand worked between 4:00 p.m. and 12:00 a.m. on December 9, 2011 during the third shift, including the service of dinner. (Doc. 54–10 at 2–4, Doc. 54–7 at 1.)

On December 10, 2011, however, the only Defendant working that day was Defendant Grand, who worked between 4:00 p.m. and 12:00 a.m., during the service of dinner. (Doc. 54–11 at 6, Doc. 54–7 at 1.)

**\*4** On December 11, 2011, the last day of Plaintiff's confinement, Defendant Merriman worked during the second shift from 8:00 a.m. until 4:00 p.m. (Doc. 54–5 at 1, Doc. 54–12 at 3–5.) Defendant Merriman inspected the food cart for lunch when it arrived that day at 10:55 a.m., and this was the only meal he was present for that day. (Doc. 54–12 at 4.) Defendant Grand worked the third shift on December 11 from 4:00 p.m. to 12:00 a.m. (Doc. 54–12 at 5; Doc. 54–7 at 1.) He conducted the secure housing evening meal at 4:30 p.m. with other officers. (Doc. 54–12 at 6.)

Based on the Defendants' summary judgment evidence, none of the Defendants, individually, could have deprived Plaintiff of meals to the extent that the deprivation would create a constitutional violation. Defendant Dickerson was only present for the lunch meal on December 9, but Plaintiff did not enter P–Dormitory until after the meal was served. Defendant Dickerson did not work at any other time between December 9 and December 11, and therefore could not have deprived Plaintiff of any meals during that period. Defendant Merriman worked on December 11 between 8:00 a.m. and 4:00 p.m. and was present for the lunch meal that day. He did not work at any other time between December 9 and December 11, and therefore, he could only be responsible for depriving Plaintiff of one meal. Lastly, Defendant Grand worked on December 9, 10, and 11, between 4:00 p.m. and 12:00 a.m., and served dinner each day. Therefore, the most he arguably could be responsible for would be depriving Plaintiff of one meal each day, or three meals in total. While the Court does not condone depriving an inmate of even one meal, the issue here is whether the alleged deprivation of several meals (at most), with absolutely no evidence of any health issues, rises to the level of a constitutional violation

For a constitutional deprivation to occur, the inmate must experience a *substantial* deprivation of food that is sufficiently serious to state a violation of the Eighth Amendment. *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir.1999) (emphasis added). Sufficiently serious means that the inmate is deprived of the minimal measure of life's necessities, or denied some basic human need. *Berry,* 192

F.3d at 507. The severity of the deprivation is determined by assessing the amount of the deprivation and the duration together. *Green v. Ferrell,* 801 F.2d 765, 770–71 (5th Cir.1986).

Even assuming, that Plaintiff had been deprived of food for two and a half days, each Defendant could not personally deprive Plaintiff of more than one meal per day for a period of three days. The failure to serve few meals is not sufficiently severe to rise to the level of a constitutional violation. *See Green,* 801 F.2d at 770 (holding that even on a regular, permanent basis, two meals a day may be adequate nutrition for a prisoner); *Darting v. Farwell,* 139 F. App'x 847 (9th Cir.2005) (deprivation of one meal is not an injury serious enough to support an Eighth Amendment violation); *Talib v. Gilley,* 138 F.3d 211, 214 (5th Cir.1998) (an inmate missing one out of nine meals was not a constitutional violation). Accordingly, none of the defendants, individually, could have deprived Plaintiff of a sufficient number of meals to raise a constitutional violation.

**\*5** Moreover, Plaintiff has not demonstrated a constitutional violation because even assuming he did not receive the meals he alleges Plaintiff has not demonstrated any injury, let alone a physical injury. *See Lockamy v. Rodriguez,* 402 F. App'x 950 (5th Cir.2010) (inmate was denied six meals over a 54 hour period but lacked any injury other than self-inflicted injury).

This conclusion is underscored by the fact that although Plaintiff claims that he lost thirty pounds over the three

day period, [3] the undisputed evidence shows that Plaintiff did not lose any weight but actually gained two pounds during his time in confinement. (Doc. 63 at 3–6.)

Further, while Plaintiff claims injury to his back, shoulder, neck and arms in his response, Doc. 57, he has not provided any evidence supporting his claims of injury nor has he provided any explanation how deprivation of food could have injured his back, shoulder, neck or arms.

Accordingly, because Plaintiff has not submitted any evidence supporting any injury or health issue caused by the alleged deprivation of several meals between December 9–11, 2011, Plaintiff has failed to demonstrate that his Eighth Amendment rights were violated.

## VI. Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 53, should be **GRANTED** and Plaintiff's Motion for Summary Judgment, Doc. 57, should be **DENIED.**

IN CHAMBERS at Gainesville, Florida this 18th day of November 2014.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 1409529

---

Footnotes

1    Presumably Plaintiff refers to Defendant Grand.

2    In his deposition, Plaintiff states that he was given a food tray for dinner on December 9, 2011, although his tray was thrown on the floor and he did not eat it. (Doc. 55–1 at 7.) However, in this situation, whether he actually ate the dinner or not is irrelevant to the conclusion reached on Defendants' motion for summary judgment.

3    Even without the Defendants' submission of Plaintiff's weight recorded during his time in confinement, the Court finds Plaintiff's assertion that he lost 30 pounds within a period of three days incredulous and outside the realm of possibility.

---

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan Mena, Plaintiff,
v.
City of New York, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City
Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

 **\*1** Plaintiff Jonathan Mena, who is currently
incarcerated and proceeding *pro se*, brings this action
pursuant to 42 U.S.C. § 1983 ("Section 1983") against
Correction Officer Benjamin Eason ("Defendant"),
alleging violations of the Eighth Amendment. Now before
the Court is Defendant's motion for summary judgment.
For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis
Bantum Correctional Center ("OBCC") on Rikers Island,
Plaintiff was placed in an intake cell in the OBCC's
receiving area, which he shared with two other individuals.
(56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell
was extremely cold, vermin-infested, and too small to
accommodate three men. (*See* Doc. No. 54-1 ("Compl.")
4, 8.) Plaintiff further alleges that these conditions,
coupled with the constant noise made by the two other
inmates, prevented him from sleeping for the entire 60-
hour period that he was held in the cell. (*See id.* at 4.)

Consequently, he asked Defendant, who was on duty,
to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.)
According to Plaintiff, Defendant responded that there
was "nothing he could do" about the situation. (*Id.* ¶ 9; *see
also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC
to complain about his experience in the cell. (*See* Compl.
at 7.) The New York City Department of Correction
("DOC") has an administrative grievance procedure,
known as the Inmate Grievance and Request Program
("IGRP"), for inmates housed at facilities such as the
OBCC. The IGRP, which was available and in effect at all
times relevant to this lawsuit, requires that inmates first
file a complaint with the Inmate Grievance Resolution
Committee ("IGRC") within ten days of the complained-
of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP
Directive") § IV(D)(1).) The IGRC then attempts to
resolve the grievance informally within five days, and if the
grievance is not informally resolved, then the inmate may
request a formal hearing before the IGRC. (56.1 Stmt. ¶
12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may
appeal the IGRC's decision to the commanding officer, or
her designee, and subsequent appeals may be taken to the
Central Office Review Committee ("CORC"). (56.1 Stmt.
¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's
decision is the final and binding decision of the DOC; if
an inmate disputes the decision of the CORC, he may
independently appeal to the Board of Correction. (IGRP
Directive at 47.) Finally, if an inmate does not receive a
timely disposition at any point throughout the grievance
process, he has the option of either granting an extension
of time to the relevant decisionmaker (i.e., the IGRC,
the commanding officer, or the CORC) or appealing and
proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see
also* IGRP Directive §§ IV(D)(9)(b), (10).)

 **\*2** As Plaintiff himself acknowledges, after submitting
the grievance and receiving no response, he neither
granted the DOC an extension of time nor appealed. (*See*
Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits
that he is "still waiting" for a disposition of his grievance,
but does not indicate any steps he has taken to appeal any
decision before the IGRC. (*See* Compl. 7.) In response
to a question on the Southern District of New York
Prison Complaint form asking a plaintiff to "set forth any
additional information that is relevant to the exhaustion
of your administrative remedies," Plaintiff repeated a
number of his substantive allegations against the OBCC

Case 9:16-cv-00885-FJS-TWD    Document 88    Filed 06/25/18    Page 71 of 82

2016 WL 3948100

staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

## B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

## III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days [,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ___, ___, ___, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.'" *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no

response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g., Winston v. Woodward,* No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis,* the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis,* any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3948100

---

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.    5

2014 WL 1057016
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Luis PAGAN

v.

Angel QUIROS, et al.

No. 3:11CV1134 (DJS).
|
Signed March 18, 2014.

**Attorneys and Law Firms**

Luis Pagan, pro se.

Steven M. Barry, Office of the Attorney General,
Hartford, CT, for Angel Quiros, et al.

*RULING ON DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT*

DOMINIC J. SQUATRITO, District Judge.

**\*1** The plaintiff, Luis Pagan, is currently incarcerated
at the MacDougall–Walker Correctional Institution,
in Suffield, Connecticut ("MacDougall–Walker"). He
commenced this civil rights action *pro se* pursuant to 42
U.S.C. § 1983 against Warden Angel Quiros, Lieutenants
Nelson Correa, Brian Siwicki and Michael Pafumi,
Counselor John Frasco, Captain Daryl Little, Deputy
Warden Faucher, Dr. Carson Wright and Correctional
Officers Aaron Bowman, Shaun Duggan, Matthew Prior,
Anthony Trombly, Sean Guimond, Vierra, Vereen and
Kidd.

On October 4, 2011, the Court dismissed all claims
under the Fourth, Fifth and Eighth Amendments to
the United States Constitution, all claims under 18
U.S.C. §§ 241, 242 and all other claims for monetary
damages against the defendants in their official capacities.
The Court concluded that the claims for deliberate
indifference to medical needs, excessive force, failure to
protect, retaliation and unconstitutional conditions of
confinement would proceed, as well as the state law claims
of assault, battery and negligence.

On January 31, 2012, the defendants filed a motion
to dismiss on the grounds that the plaintiff had failed

to allege the personal involvement of Warden Quiros,
Deputy Warden Faucher and Captain Little in any of the
alleged violations of his rights, that the allegations against
Correctional Officers Vierra and Vereen failed to state a
claim upon which relief may be granted, and that all of the
defendants were entitled to statutory immunity as to any
negligence claims. On May 23, 2012, the Court granted the
motion as to the retaliation and negligence claims, and all
claims against defendants Quiros, Faucher and Little. The
Court denied the motion to dismiss as to the claims against
defendants Vierra and Vereen for deliberate indifference
to the plaintiff's health and safety.

On July 30, 2012, the plaintiff filed a motion to amend
and clarify his Complaint. On August 1, 2012, the Court
granted the motion to the extent it sought to dismiss all
claims against Dr. Carson Wright and to clarify that after
March 19, 2010, the plaintiff was no longer a pretrial
detainee. Thus, all claims against Dr. Wright have been
dismissed and he has been terminated as a defendant in
this case.

The defendants have filed a motion for partial summary
judgment as to all claims against Lieutenant Siwicki and
Correctional Officers Vierra, Vereen and Kidd. For the
reasons that follow, the motion is granted.

**I. *Standard of Review***
In a motion for summary judgment, the burden is
on the moving party to establish that there are no
genuine issues of material fact in dispute and that it is
entitled to judgment as a matter of law. *See* Rule 56(a),
Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 256 (1986). The moving party may satisfy this burden
by demonstrating the lack of evidence to support the
nonmoving party's case. *See PepsiCo, Inc. v. Coca–Cola
Co.,* 315 F.3d 101, 105 (2d Cir.2002) (per curiam).

**\*2** An issue of fact is "material" if it "might affect
the outcome of the suit under the governing law," and
is "genuine" if "the evidence is such that a reasonable
jury could return a verdict for the nonmoving party."
*Anderson,* 477 U.S. at 248. "[U]nsupported allegations do
not create a material issue of fact." *Weinstock v. Columbia
Univ.,* 224 F.3d 33, 41 (2d Cir.2000). When a motion for
summary judgment is supported by documentary evidence
and sworn affidavits, the nonmoving party must do more
than vaguely assert the existence of some unspecified
disputed material facts or present mere speculation or

conjecture. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence based on which the jury could reasonably find for him. *See Dawson v. County of Westchester,* 373 F.3d 265, 272 (2d Cir.2004). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004).

Where one party is proceeding *pro se,* the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

## II. *Facts* [1]

In January 2010, the plaintiff was a pretrial detainee and was confined at Northern Correctional Institution in Somers, Connecticut ("Northern"). On January 6, 2010, Correctional Officers Sean Guimond and Richard Jones reported to the plaintiff's cell in Two East Housing Unit to escort the plaintiff and his cellmate to recreation. Officers Jones and Guimond placed handcuffs on both the plaintiff and his cellmate through a slot in the cell door. As the cell door opened, the plaintiff's cellmate exited the cell and proceeded to strike Officer Jones in the face with his hands and the handcuffs. Officer Guimond approached Officer Jones in an attempt to assist him. The plaintiff came out of the cell and ran towards Officer Jones. The plaintiff then raised up his hands in the direction of Officer Guimond, they struggled and the plaintiff attempted to take a swing at Officer Guimond. Correctional staff called for assistance and other staff responded to the scene to assist in gaining control over the plaintiff and his cellmate.

On January 12, 2010, Correctional Officers Kidd and Duggan delivered dinner to the plaintiff in his cell. The plaintiff alleges that Officer Kidd spit into his juice prior to delivering it to him.

**\*3** On January 27, 2010, Connecticut State Police troopers arrested the plaintiff on an assault charge in connection with the altercation that occurred on January 6, 2010. The plaintiff subsequently pleaded guilty to the charge.

On March 19, 2010, in the Connecticut Superior Court for the Judicial District of Windham at Danielson, the plaintiff pleaded guilty to Robbery in the First Degree in violation of Connecticut General Statutes § 53a–134, Criminal Use of Weapon in violation of Connecticut General Statutes § 53a–216, and Tampering with a Witness in violation of Connecticut General Statutes § 53a–151. At that time a judge imposed a total effective sentence of ten years of imprisonment. *See State v. Pagan,* Docket Nos. WWM–CR08–0135619–T, WWM–CR09–0138407–T (Conn.Super.Ct. Mar. 19, 2010). Thus, as of March 19, 2010, the plaintiff was no longer a pretrial detainee.

On May 21, 2010, the plaintiff had a hearing in Rockville Superior Court in connection with the criminal assault charge filed against him in January 2010. Correctional Officers Vierra and Vereen were assigned to transport the plaintiff from Northern to the courthouse and back to Northern after the court hearing. The weather was hot that day. The plaintiff had trouble breathing while he was in the prison van and also sweated excessively.

On July 30, 2010, in the Connecticut Superior Court for the Judicial District of Tolland at Rockville, the plaintiff pleaded guilty to the charge of assault on a correctional officer in violation of Connecticut General Statutes § 53a–167c. A judge imposed a two year sentence of imprisonment to be served consecutively to the plaintiff's prior sentence for a robbery conviction. *See State v. Pagan,* Docket No. TTD–CR10–0096100–T (Conn.Super.Ct. July 30, 2010)

## III. *Discussion*

The defendants move for partial summary judgment on three grounds. They argue that (1) the allegations against Lieutenant Siwicki and Correctional Officers Kidd, Vierra and Vereen fail to state a claim upon which relief may be granted; (2) the requests for declaratory and injunctive relief are moot; and (3) Officers Kidd, Vierra and Vereen and Lieutenant Siwicki are entitled to qualified immunity.

### A. *Failure to State a Claim—Retaliation*

The Complaint includes an allegation that Officer Kidd retaliated against the plaintiff by spitting into his juice on January 12, 2010. (*See* Compl. ¶ 19, 36.) The plaintiff does not explain the basis for this claim of retaliation. The Complaint does not include a claim of retaliation against Lieutenant Siwicki.

In response to the motion for summary judgment, the plaintiff concedes that there are no facts to support the existence of an underlying constitutionally protected activity that would give rise to a retaliation claim against either defendant Kidd or defendant Siwicki. The Court agrees that the plaintiff has failed to state a claim of retaliation against either defendant Kidd or defendant Siwicki. Thus, the motion for summary judgment is granted as to any claims of retaliation against defendants Kidd and Siwicki.

### B. *Failure to State a Claim—Conditions of Confinement*

**\*4** The plaintiff contends that Lieutenant Siwicki and Correctional Officers Kidd, Vierra and Vereen subjected him to various unconstitutional conditions of confinement. The defendants argue that the plaintiff's allegations do not state viable claims under the Eighth Amendment.

The parties do not dispute that the plaintiff was a pretrial detainee at the time of the incident involving defendants Siwicki and Kidd. The claims of a pretrial detainee confined in a state correctional facility are reviewed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979). Because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime," the Due Process clause of the Fourteenth Amendment dictates that he or she may not be punished in any manner-neither cruelly and unusually nor otherwise. *Id.* at 536–37.

The Second Circuit has determined that "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009). To state a claim under the Eighth Amendment, the plaintiff must demonstrate both

that he is incarcerated under conditions that pose a substantial risk of serious harm to his health or safety and that the defendant prison officials acted with a " 'sufficiently culpable state of mind.' " *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v.. Seiter,* 501 U.S. 294, 297 (1991)). The Supreme Court has held that a prisoner's conditions of confinement must meet "minimal civilized measure[s] of life's necessities." *Wilson,* 501 U.S. at 298 (internal quotation marks omitted). Thus, to meet the objective prong of the Eighth Amendment standard, an inmate must demonstrate that the conditions, either alone or in combination, deprived him or her of basic human needs such as "food, clothing, shelter, medical care, and reasonably safety." *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 200 (1989). The court evaluates the conditions in light of contemporary standards of decency to determine whether they are sufficiently serious to satisfy the objective element. *See Rhodes v. Chapman,* 452 U.S. 337, 346–47 (1981).

The subjective prong of the Eighth Amendment standard is met if the plaintiff can demonstrate that the prison officials were not "mere[ly] negligen[t]," but that they acted with "deliberate indifference" to inmate health and safety. *Farmer,* 511 U.S. at 835. To constitute deliberate indifference, the prison official must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.* at 837. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003).

### 1. *Lieutenant Siwicki*

**\*5** The defendants contend that the only claim against defendant Siwicki relates to his alleged refusal to investigate the plaintiff's allegation that Officer Kidd spit into his juice on January 12, 2010. During the plaintiff's deposition by counsel for the defendants, the plaintiff testified that he had no other claims against Lieutenant Siwicki other than his claim that Lieutenant Siwicki had failed to investigate his complaint about Officer Kidd spitting into his juice. (*See* Defs.' Local Rule 56(a) 1 Statement, Attach. 1, Doc. No. 117–2, at 17.) The plaintiff

Pagan v. Quiros, Not Reported in F.Supp.3d (2014)
Case 9:16-cv-00885-FJS-TWD    Document 88    Filed 06/25/18    Page 78 of 82
2014 WL 1057016

does not dispute this testimony or argue that he is pursuing any other claims against Lieutenant Siwicki.

The defendants argue that the plaintiff has failed to allege that Lieutenant Siwicki was sufficiently involved in the incident involving the contaminated drink offered to the plaintiff by Officer Kidd. In response, the plaintiff indicates that he does not oppose summary judgment in favor of Lieutenant Siwicki because he agrees that he has not alleged sufficient facts to show defendant Siwicki's personal involvement in the January 12, 2010 incident. Accordingly, the motion for summary judgment is granted as to the claim against defendant Siwicki relating to the alleged contamination of the plaintiff's drink by Officer Kidd. The Court considers any other claims asserted against defendant Siwicki to have been withdrawn.

### 2. Correctional Officer Kidd

The plaintiff alleges that on January 12, 2010, he was confined in One East Cell 216 at Northern. Officer Kidd and Officer Dugan came to his cell that day to deliver dinner. Officer Kidd was responsible for pouring the drinks to be served with the dinner meal. He poured juice into a cup, handed the cup to Officer Duggan who placed the cup and the plaintiff's dinner meal in the food slot in the plaintiff's cell door.

The plaintiff claims that when he looked at the juice in the cup, he noticed a white substance floating on the surface. He fished the substance out with his finger and thought that it looked like mucous. He concluded that Officer Kidd had spit into the juice prior to handing it to Officer Duggan to be put on the plaintiff's food tray. The plaintiff did not drink the juice or eat any part of his dinner meal that day. Lieutenant Siwicki transferred the plaintiff to One West Cell 101 later that evening. The defendants contend that the plaintiff's allegations against defendant Kidd do not state a claim of a violation of the plaintiff's Eighth Amendment rights.

There are no allegations or evidence indicating that Officer Kidd was involved in the altercation between the plaintiff and Officer Guimond on January 6, 2010. The plaintiff concedes that he did not observe Officer Kidd spit into his juice on January 12, 2010. (See Mem. Opp'n Mot. Summ. J., Doc. No. 125, at 8.) Furthermore, he has offered no evidence demonstrating that anyone else observed Officer Kidd spit into his drink. Officer Kidd has filed an affidavit stating that he did not tamper with or

spit into the plaintiff's food or drink on January 12, 2010, or at any other time. Nor did he observe that anyone else had spit into the plaintiff's drink. (See Defs.' Local Rule 56(a) 1 Statement, Attach. 2, Kidd. Aff. ¶¶ 3–4, Doc. No. 117–2, at 29.)

**\*6** The Court concludes that the plaintiff has not met his burden of demonstrating that Officer Kidd in fact attempted to contaminate his juice by spitting into it before it was served to him at the dinner meal on January 6, 2010. Thus, the plaintiff has failed to state a claim that Officer Kidd violated his constitutionally or federally protected rights. See Thaxton v. Simmons, No. 9:10–CV–1318(MAD)/RFT), 2013 WL 4806457, at \*5 (N.D.N.Y. Sept. 9, 2013)(granting summary judgment on Eighth Amendment claim because evidence presented would not permit a "rational juror [to] conclude that Defendant Simmons was personally involved in tampering with Plaintiff's food on April 6 merely because he served the food that day.")

Even if there was evidence that Officer Kidd had contaminated the plaintiff's juice by spitting into it, such evidence does not meet the objective prong of the Eighth Amendment conditions of confinement standard. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (internal quotation marks omitted). Although "no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, ... under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Id. (citation omitted).

The plaintiff alleges that Officer Kidd contaminated his juice with saliva during the dinner meal on one day in January 2010. As a result, the plaintiff did not drink the juice or eat his dinner meal that day.

The plaintiff does not allege that anyone deprived him of breakfast or lunch on January 12, 2010. Nor does he allege that anyone deprived him of breakfast, lunch or dinner on any other day either before or after January 12, 2010 or that he suspected that Officer Kidd had contaminated a meal or drink on any other day. Furthermore, the plaintiff does not allege that the deprivation of the dinner meal on

January 12, 2010 caused imminent danger to his health or safety.

The allegation that defendant Kidd denied the plaintiff food and drink at one meal does not constitute a substantial or sufficiently serious deprivation of a basic human need. *See Hankerson v. Nassau County Correctional Facility,* No. 12–CV5282(SJF)(WDW), 2012 WL 6055019, at *4 (E.D.N.Y. Dec. 4, 2012) (inmate's claim that "he missed a single meal falls far short of a 'substantial deprivation of food' and does not rise to the level of a constitutional deprivation"); *Waring v. Meachum,* 175 F.Supp.2d 230, 240–41 (D.Conn.2001) (no Eighth Amendment claim where inmates missed one or two meals and there was no indication that future meals were missed). Thus, the plaintiff has not met the objective prong of the Eighth Amendment standard. The motion for summary judgment is granted as to the claims against defendant Kidd.

### 3. *Officers Vereen and Vierra—Extreme Temperature*

 **\*7** The plaintiff alleges that Officers Vereen and Vierra subjected him to unconstitutional conditions of confinement when they turned on the heat in the prison van during a trip to and from Connecticut Superior Court on May 21, 2010, in connection with a criminal case. The defendants argue that the plaintiff has not met the objective prong of the Eighth Amendment standard because he has failed to demonstrate that he suffered a sufficiently serious deprivation of a basic human need.

At that time of the plaintiff's trip to the Connecticut Superior Court on May 21, 2010, the plaintiff had already been convicted and sentenced on other criminal charges. Thus, he was no longer a pretrial detainee. Accordingly, the plaintiff's claim is analyzed under the Eighth Amendment standard set forth above.

Prisoners have no right to be housed in comfortable surroundings. *See Rhodes v. Chapman,* 452 U.S. 337, 349 (1981) ("[T]he Constitution does not mandate comfortable prisons"); *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.") Thus, conditions that are "restrictive or even harsh" are "part of the penalty criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347.

To meet the objective prong of the Eighth Amendment standard, the plaintiff must show that conditions under which he was confined by the defendants resulted in "serious deprivations of basic human needs." *Id.* Courts, including the Second Circuit, have recognized that exposure to excessively hot or cold conditions in a prison setting for a prolonged period of time may violate the Eighth Amendment. *See Gaston v. Coughlin,* 249 F.3d 156, 165 (2d Cir.2001) (exposure of inmate to freezing cold temperatures for a five-month period during the winter could constitute an Eighth Amendment violation); *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d cir.1988) (reversing grant of summary judgment because evidence demonstrated that prison officials had deliberately exposed inmate to bitter cold in cell block for three months); *Clark v. Bandy,* No. 2:10–CV–169–RWS, 2011 WL 11346975, at *3 (N.D.Ga. Apr. 9, 2011) (prisoner's complaints to prison officials of excessive heat and trouble breathing for three months could state an Eighth Amendment claim).

The parties do not dispute that the State of Connecticut charged the plaintiff with assault on a peace/correctional officer in connection with the altercation that occurred on January 6, 2010, between the plaintiff and his cellmate and Officers Jones and Guimond. Further, on May 21, 2010, in connection with a court hearing scheduled in the criminal assault case against the plaintiff, Officers Vereen and Vierra transported the plaintiff in a prison van from Northern to the courthouse in Rockville and then back to Northern after the hearing. The parties also agree that it was hot that day, but neither party has presented evidence as to the exact temperature.

 **\*8** The plaintiff alleges that on the way to the courthouse, Officers Vierra and Vereen had the windows open in the front of the van, but that the heat was turned on in the back of the van blowing hot air from the vents in the ceiling. According to the plaintiff, he had asthma and had trouble breathing because of the heat, but was able to breath in cooler air from the front of the transport van through holes in the partition separating the front of the van from the back of the van.

The plaintiff further alleges that on the way back from the courthouse to Northern, the heat was turned on in the back of the van, Officers Vierra and Vereen drove around for about two hours before going back to Northern, and

when the plaintiff arrived at Northern he was sweating and his clothes were soaked in sweat. Officers Vereen and Vierra dispute that the heat was turned on in the back of the van. They aver that the air-conditioning was turned in both the front and back of the van and that they drove directly back to Northern from the courthouse.

Even assuming the plaintiff's allegations are true and that either the heat was on or the air-conditioning did not work in the back of the van, the plaintiff has not provided evidence that he suffered serious harm or injury as a result of the temperature in the prison van. Although he alleges that the heat was on in the back of the van on the way to the courthouse, he does not claim that he had trouble breathing or that he started to sweat during the ride or that he was sweaty or could not breath when he arrived at the courthouse. Furthermore, he does not allege that he informed Officers Vereen or Vierra about the hot temperature or the hot air blowing from the vents in the back of the van at any time during the trip to the courthouse or upon his arrival at the courthouse.

The plaintiff offers no evidence that prior to his return from the courthouse to Northern, he attempted to inform Officers Vierra or Vereen of the hot temperature in the back of the van. Nor did he try to get the attention of either Officer during the ride back to Northern. The plaintiff concedes that he was able to breath cooler air through holes in the partition dividing the front of the van from the back of the van.

Even assuming that plaintiff in fact suffered from asthma on May 21, 2010, had difficulty breathing because of the heat on the trip to the courthouse and sweated profusely during the return trip to Northern, the plaintiff provides no evidence that his alleged breathing difficulties, asthma or sweaty condition required any medical or other type of treatment upon his arrival at Northern or at any other time.

Although the temperature in the prison van during the trip may have been uncomfortable, the Court concludes that the alleged conditions were not sufficiently severe or prolonged enough to deprive the plaintiff of the minimal civilized measures of life's necessities. *See Trammell v. Keane,* 338 F.3d 155, 164–65 (2d Cir.2003) (short-term exposure to cold temperatures did not constitute threat to health of safety under Eighth Amendment); *Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir.1995)

(although high temperature in extended lockdown unit was uncomfortable, it did not deprive inmate of basic human need because inmate failed to present medical evidence that heat aggravated his sinus condition); *Ramirez v. Strange,* No. 3:08cv906(AWT), 2010 WL 3828002, at *6 (D.Conn. Sept. 21, 2010) (granting summary judgment to prison officials on inmate's claim that lack of air conditioning in prison led him to nearly faint from the heat several times because that allegation did "not reflect an extreme deprivation of the need for habitable shelter, health or safety"). Thus, the plaintiff has not met the objective element of the Eighth Amendment standard. The motion for summary judgment is granted as to the conditions claim against defendants Vierra and Vereen relating to the temperature in the prison van.

### 4. *Officer Vierra—Verbal Harassment*

**\*9** The plaintiff alleges that Officer Vierra made comments about beating him up just before the trip to court on May 21, 2010, and just after his arrival back at Northern later that day.[2] In addition, during the escort of the plaintiff back to his cell after the court trip, Officer Vierra allegedly threatened to make the plaintiff's future trips to court uncomfortable and called the plaintiff several names, including "bitch and pussy." The defendants argue that the these allegations fail to state a claim of a violation of the plaintiff's Eighth Amendment rights.

It is well-settled that verbal harassment or remarks do not constitute a cognizable violation of an individual's federally or constitutionally protected rights. *See Morrison v. Hartman,* 898 F.Supp.2d 577, 584 (W.D.N.Y.2012) ( "Allegations of verbal abuse, without more, generally fail to state an actionable claim under the Eighth Amendment."); *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (internal quotation marks omitted). Although Officer Vierra allegedly made reference to the incident in which Correctional Officers at Northern had beaten the plaintiff up, called the plaintiff names, used profanity, and threatened to beat the plaintiff up and make future court trips uncomfortable, the plaintiff does not allege that Officer Vierra actually

attempted to physically harm him or that he ever transported the plaintiff to court again. Accordingly, the plaintiff's claims of verbal harassment and threats do not state a claim of a violation of his constitutional rights. The motion for summary judgment is granted as to the claims of verbal abuse and threatening comments by defendant Vierra.

### 5. *Officer Vierra—Failure to Protect*
The plaintiff alleges that during the escort back to his cell after the court trip, Officer Vierra called him several names, including a "snitch." The plaintiff contends that this conduct subjected him to a risk of harm because other inmates might have heard Officer Vierra call him a snitch. The defendants argue that this allegation fails to state a claim under the Eighth Amendment.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). That duty includes taking appropriate action "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted). To establish a failure to protect claim under the Eighth Amendment, a prisoner must show that the conditions of his incarceration "pos[ed] a substantial risk of serious harm" to him and that the prison official, who was aware of the risk of harm, was deliberately indifferent to his or her safety "by failing to take reasonable measures to abate it." *See id.* at 834, 847.

**\*10** Courts within the Second Circuit have held that, in a prison setting, labeling an inmate as "a snitch" may pose a threat to that inmate's safety or health. *See Campbell v. Gardiner,* No. 12–CV–6003P, 2014 WL 906160, \*4 (W.D.N.Y. Mar. 7, 2014) (a claim for deliberate indifference may lie where a corrections officer identifies an inmate as being an informant or a snitch in front of other inmates). To state a claim under the objective prong of the Eighth Amendment, however, a plaintiff must allege "[a]t the very least ... that the defendant's actions gave rise to an excessive risk to the inmate's safety." *Abney v. Jopp,* 655 F.Supp.2d 231, 233 (W.D.N.Y.2009). Generally, a prison official's verbal statement labeling an inmate as a snitch or informant will not meet the objective prong of the Eighth Amendment, absent allegations that the inmate faced actual or imminent physical injury or harm as a result

of the comment. *See Id.* at 233–34; *Green v. City of New York Dept. Of Corr.,* No. 06 Civ. 4978(LTS)(KNF), 2008 WL 2485402, at \*7 (S.D.N.Y. June 19, 2008) ("cases cited by Plaintiff in which courts found viable Eighth Amendment claims premised on being labeled a 'snitch,' ... [included] allegations or proffered evidence of actual physical harm").

Here, the plaintiff simply alleges that Officer Vierra referred to him as a "snitch" as he walked past other inmates' cells while escorting him back to his own cell. The plaintiff contends that Officer Vierra's comment might have placed his life in danger if other inmates had heard the comment. The plaintiff does not allege or provide evidence to show that he suffered any harm or injury as a result of this comment.

The Court concludes that no reasonable jury would find, based on the admissible evidence, that Officer Vierra's alleged act of labeling the plaintiff as a snitch on one occasion, in and of itself, exposed the plaintiff to a substantial risk of serious harm. Thus, the plaintiff has not met the objective prong of the Eighth Amendment standard. The motion for summary judgment is granted as to the claim that Officer Vierra violated the plaintiff's Eighth Amendment rights by labeling him as a snitch.

### C. *Injunctive and Declaratory Relief*
The defendants argue that the plaintiff's request for injunctive relief is moot because he has been transferred from Northern. The Second Circuit has held that an inmate's requests for injunctive and declaratory relief against correctional staff or conditions of confinement at a particular correctional institution become moot when the inmate is discharged or transferred to a different correctional institution. *See Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006). Other courts concur with this result. *See, e.g., McAlpine v. Thompson,* 187 F.3d 1213, 1215 (10th Cir.1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement).

**\*11** The plaintiff's allegations in the Complaint relate to conditions that occurred at Northern during 2010. The plaintiff seeks injunctive relief against defendants who were employed at Northern at the time of the filing of the Complaint. The plaintiff is currently incarcerated at MacDougall–Walker. The plaintiff does not object to the

dismissal of his requests for injunctive relief. Because the relief sought by the plaintiff is no longer needed, since he is currently incarcerated at a different correctional institution, the claims for injunctive relief are moot. The motion for summary judgment is granted as to the claims for injunctive relief.

The defendants also seek summary judgment as to the plaintiff's request for declaratory relief. The plaintiff seeks a declaration that the defendants violated his constitutionally and federally protected rights. Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great harm. *See In re Combustion Equipment Assoc. Inc.,* 838 F.2d 35, 37 (2d Cir.1988). Because declaratory relief operates in a prospective manner, it is not appropriately applied to prior violations because damages have already accrued. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. International Wire Group, Inc.,* No. 02 Civ. 10338(SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003).

The alleged violations of the plaintiff's rights which occurred over three years ago at Northern will be compensated by monetary damages should the plaintiff prevail in this action. Accordingly, declaratory relief is not appropriate. The motion for summary judgment is granted as to the plaintiff's request for declaratory relief.

## IV. *Conclusion*

The Motion for Partial Summary Judgment [**Doc. No. 117**] is **GRANTED** in all respects as to the retaliation claims against defendants Kidd and Siwicki, the Eighth Amendment claim against defendant Siwicki relating to the alleged contamination of the plaintiff's drink by Officer Kidd, the Eighth Amendment claims against defendant Kidd, the Eighth Amendment claim against defendant Vierra and Vereen relating to the temperature in the prison van, the Eighth Amendment claims of verbal harassment and failure to protect against defendant Vierra, and the requests for injunctive and declaratory relief against all defendants. The Court considers any other claims asserted against defendant Siwicki to have been **WITHDRAWN.**

Thus, all claims against defendants Siwicki, Kidd, Vierra and Vereen have been dismissed. The case proceeds as to the Eighth Amendment claims of excessive use of force and failure to protect, and state law claims of assault and battery, against defendants Lieutenants Nelson Correa and Michael Pafumi, Counselor John Frasco and Correctional Officers Aaron Bowman, Shaun Duggan, Matthew Prior, Anthony Trombly and Sean Guimond in their individual capacities.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1057016

Footnotes

1    The undisputed facts are taken from defendants' Local Rule 56(a) 1 Statement along with Attachments to the Statement [Doc. No. 117–2], the plaintiff's Local Rule 56(a) 2 Statement [Docs. Nos. 125–4 through 125–5] and attached Exhibits.

2    Officer Vierra allegedly said "You know, I should whoop your ass." (*See* Pl.'s Local Rule 56(a) 2 Statement, Ex. 2, Pl.'s Aff. ¶ 15, Doc. No. 125–5, at 7.) Officer Vierra denies that he ever spoke in a threatening manner to the plaintiff. (*See* Defs.' Local Rule 56(a) 1 Statement, Attach. 4, Vierra Aff. ¶ 7, Doc. No. 117–2, at 34.)